BROOKS, APPELLEE AND CROSS-APPELLANT, *v.* HURST BUICK-PONTIAC-OLDS-GMC, INC., APPELLANT AND CROSS-APPELLEE.

(No. CA83-08-057—Decided February 19, 1985.)

*Ronald L. Burdge,* for appellee.
*Jack M. Marshall,* for appellant.

*Per Curiam.* This cause came on to be heard upon an appeal from the Franklin Municipal Court of Warren County, Ohio.

On October 10, 1980, plaintiff-appellee, M. Sue Brooks, entered into a contract with defendant-appellant, Hurst Buick-Pontiac-Olds-GMC, Inc., to purchase a new 1981 Buick Skylark automobile, on which she made a down payment of $200. It appears that when the car arrived at defendant's place of business on December 9, 1980, it had been damaged in transit, and had apparently been repaired unsatisfactorily by the carrier. It appears that, at first, defendant's agent denied that the car had been damaged, but later admitted the damage and told plaintiff the car would be repaired. The car was subsequently repaired, and plaintiff and her husband again inspected it. This time plaintiff refused to accept the car because she could not tell how badly it had been damaged, and she asked for the return of her deposit. Defendant insisted that the damage to the car was minor and that the car, having been repaired, was indeed a "new" car, which defendant could not return to General Motors Corp. ("GMC"). Accordingly, defendant refused to return the $200 to plaintiff.

On June 3, 1981, plaintiff filed, in the Franklin Municipal Court, a complaint against defendant in which she charged it with various violations of the Ohio Consumer Sales Practices Act. In addition, defendant counterclaimed alleging breach of contract on plaintiff's part. After considerable preliminary maneuvering, the case eventually was submitted to a jury which returned a verdict for plaintiff in the amount of $2,160.64. Defendant's counterclaim was dismissed. Plaintiff also sought attorney fees, and after a hearing before the court, the court awarded plaintiff attorney fees in the amount of $2,500, together with expenses in the amount of $368.02.

Defendant assigns error as follows:

1. "The trial court erred in overruling defendant's motion to dismiss and in entering judgment herein where it lacked subject matter jurisdiction over the cause at issue."

2. "The trial court's instruction[s] to the jury constituted prejudicial error as a matter of law."

3. "The trial court's overruling of defendant's motion for remittitur/mistrial/new trial was prejudicial error contrary to law and a gross abuse of discretion."

4. "The entry of judgment by the trial court for the plaintiff was error

contrary to law where the special interrogatories and verdict forms assessing damages were clearly against the manifest weight of the evidence."

5. "The trial court erred to the prejudice of defendant-appellant in awarding the plaintiff attorney's fees and expenses for trial of the cause."

6. "Plain error attended the proceedings below where R.C. 1345.02 and .09 are void for vagueness and an arbitrary and unreasonable exercise of the police power, in violation of due process rights established by the Ohio and United States Constitutions."

Plaintiff has cross-appealed and assigns as error that the trial court abused its discretion by only granting $2,500 in attorney fees to plaintiff when the case lasted almost two years and consumed 123.2 hours of counsel's time.

I

Defendant's place of business is in the city of Lebanon, Ohio. All conversations in connection with plaintiff's purchase of the Buick Skylark, except for a couple of telephone calls, took place there; and it was there that plaintiff refused to go through with the contract and demanded the return of her down payment. Accordingly, in its first assignment of error defendant contends that the Franklin Municipal Court did not have jurisdiction to try the cause, since its territorial jurisdiction does not include the city of Lebanon. R.C. 1901.02. Plaintiff responds that Franklin is involved since the defendant made misrepresentations to her at her home in Franklin *via* telephone. She further contends that the issue is not jurisdiction but venue, and that defendant waived its right to object to venue when it answered and filed a counterclaim.

Defendant relies primarily on two *nisi prius* cases: *Santiago* v. *S.S. Kresge Co.* (C.P. 1976), 2 O.O. 3d 54, and *Melamed* v. *Catalano* (M.C. 1981), 20 O.O. 3d 428. *Santiago, supra,* insofar as

that case is factually worthy of note, was a class action for declaratory relief. The *Santiago* case arose from the fact that Kresge was suing, in the Hamilton County Municipal Court, Cuyahoga County credit customers who were delinquent in their payments. The class sought a declaration that all judgments against them obtained in that court were void for want of jurisdiction. However, we note that the common pleas court, in holding that the judgments were void, based its conclusion on pre-rule cases, even though the Ohio Civil Rules had been in effect since July 1, 1970.

*Melamed, supra,* involved a motion to transfer the case to another municipal court because of improper venue. In the court's discussion, the Cleveland Heights Municipal Court became involved with the "territorial jurisdiction" of R.C. 1901.02 to the extent that it construed the word "jurisdiction" as used in the code section to be descriptive of the court's power to render a judgment. Accordingly, it proclaimed that municipal court subject matter jurisdiction existed when three jurisdictional requirements were met: (1) monetary jurisdiction per R.C. 1901.17; (2) "categorical" jurisdiction per R.C. 1901.18; and (3) territorial jurisdiction per R.C. 1901.02 and 1901.19(D). Specifically, the court in *Melamed* refused to hold that R.C. 1901.02 and 1901.19 related only to venue, because to do so " '* * * would be to ignore the unequivocal language of these statutes, and to reverse the traditional and longstanding territorial nature of these courts.' * * *" *Id.* at 435, quoting *Santiago, supra,* at 56.

However, neither *Melamed* nor *Santiago* discusses the applicability of *Morrison* v. *Steiner* (1972), 32 Ohio St. 2d 86 [61 O.O.2d 335], an Ohio Supreme Court case decided several years before either of the decisions in *Melamed, supra,* or *Santiago, supra.* In *Morrison,* the plaintiffs, residents of Oregon, Lucas

County, Ohio sued the defendant, a resident of Hancock County, in the Oregon Municipal Court. Defendant moved to quash service and to dismiss the complaint, which motion was overruled; and the court of appeals affirmed. The Supreme Court allowed a motion to certify the record.

In its unanimous decision, which affirmed the court of appeals, the Supreme Court did not comment at all on any impact of R.C. 1901.02. The court stated at 87-88:

"* * * However, appellant misconceives the nature of municipal court subject-matter jurisdiction (as opposed to territorial boundaries) and how the Rules of Civil Procedure operate within the limits imposed upon that jurisdiction by the General Assembly.

"Subject-matter jurisdiction of a court connotes the power to hear and decide a case upon its merits, while venue connotes the locality where the suit should be heard. [Citations omitted.] Subject-matter jurisdiction defines the competency of a court to render a valid judgment in a particular action. [Citations omitted.]

"Subject-matter jurisdiction of Ohio municipal courts is created and defined by R.C. 1901.18, which provides, *inter alia,* that 'a municipal court has original jurisdiction within its territory * * * (C) in any action at law based on contract * * *.' The monetary limit on the instant action is provided by R.C. 1901.17 * * *. In the case at bar, the parties entered into a contract by which appellant bought certain equipment, * * * giving his promissory note for $1,450. Upon his failure to make payments on the note, an action was commenced by appellees, seeking a judgment for money only. This is the type of action which R.C. 1901.18 (C) and R.C. 1901.17 encompass. *For purposes of those sections, every municipal court in the state would have*

*subject-matter jurisdiction of such an action.*" (Emphasis added.)

Interpolating, we may add that any municipal court in the state would have subject matter jurisdiction to hear a case such as the one at bar. This point of view as to actions under the Ohio Consumer Sales Practices Act is reinforced by R.C. 1345.04 which provides as follows:

"The courts of common pleas, and municipal or county courts within their respective monetary jurisdiction, have jurisdiction over any supplier with respect to any act or practice in this state covered by sections 1345.01 to 1345.13 of the Revised Code * * *."

The Supreme Court in *Morrison, supra,* pointed out that a plaintiff does not have complete freedom of choice in selecting a forum. Venue, which relates to the geographic division where a case can be tried, must also be proper. It added, however, that "[v]enue is a procedural matter. Although once the private domain of the General Assembly, it is now properly within the rule-making power of the Supreme Court * * *." *Morrison,* at 88. Civ. R. 3(B) provides that "[a]ny action may be venued, commenced and decided in any court in any county. * * *" In failing to mention R.C. 1901.02, when the Supreme Court in *Morrison* discussed subject matter jurisdiction, it is clear that the court considered that section to be a venue (procedural) section despite the language therein about "territorial" jurisdiction.

Defendant did not move for a change of venue. Its motion was for dismissal, and that motion was properly overruled. The defense of improper venue may be waived. Civ. R. 12(H). Since defendant did not at any time seek a change of venue, we need not discuss whether the case at bar was properly venued. Defendant's first assignment of error is not well-taken and is hereby overruled.

## II[1]

\* \* \*

## III

\* \* \*

## IV

In its fourth assignment of error defendant argues that the jury's response to an interrogatory that defendant had violated the "new for used" rule (Ohio Adm. Code 109:4-3-08)[2] was manifestly against the weight of the evidence, in that there was no question that the car tendered to plaintiff was indeed a new car. It bases that conclusion on the testimony of its president, Fred Hurst, Jr., that many vehicles coming off the assembly line require cosmetic repair; that there are also vehicles damaged in transit; that these repairs are always made by the dealer; that unless the repairs exceed $300, such damages are not considered significant and the vehicle is still a new car; that the cost of the repairs as to the Buick Skylark was $129; and that in such a case, GMC considered the vehicle to be new. In opposition to this testimony is the testimony of plaintiff's ex-husband as to his view of the extent of the damages and the basis for plaintiff's refusal to accept the car.

The court charged the jury that:

"A purchaser of a new automobile has a reasonable right to expect an automobile completely new in every respect.

"There is in Ohio no legal definition of the term 'new car.' It is a factual issue for the jury to decide in this case."

In other words, the court told the jury that it was privileged to use its own common sense in deciding whether the car which defendant offered to deliver to plaintiff was new or used, and no objection was taken to this charge. In view of the testimony regarding damage to the car, regardless of what GMC might think, there was ample evidence to support the jury's conclusion that the car was used.

Defendant offers the same argument as to the jury's finding that it had violated the "failure to deliver" rule (Ohio Adm. Code 109:4-3-09) and the "deposit" rule (Ohio Adm. Code 109:4-3-07). The "failure to deliver" rule required defendant to deliver plaintiff's new car within eight weeks or to make a full refund of plaintiff's deposit, or advise plaintiff of the delay and offer to make a full refund if requested. The evidence established that defendant did contact plaintiff within the eight weeks, and did receive plaintiff's permission to proceed with repairs. Defendant, however, did not make any offer regarding refund. Under these circumstances, the jury had sufficient evidence upon which to base its conclusion that defendant had violated this rule. Defendant does not at this point argue substantial compliance. The jury was not charged as to substantial compliance; and no such charge was requested.

The same can be said of the "deposit" rule. This rule requires the seller who receives a deposit to present the buyer with a written receipt therefor which states, *inter alia,* whether the deposit is refundable and under what conditions. The evidence established that the defendant did give plaintiff a receipt for her $200 deposit. This receipt, however, did not have any reference to refund.

Defendant's fourth assignment of error is accordingly overruled.

---

[1] The text of the opinion as it appears herein was abridged by the court.

[2] The rules referred to herein are administrative rules issued by the Attorney General pursuant to authority conferred upon him by R.C. 1345.05(A)(1) and (B)(2).

## V

Defendant's fifth assignment of error and plaintiff's single assignment of error on cross-appeal deal with the same subject — plaintiff's entitlement to attorney fees — and, therefore, these assignments of error will be considered together. Defendant questions the propriety of the court allowing plaintiff attorney fees at all, and plaintiff complains about the amount allowed.

R.C. 1345.09(F) provides in part:

"The court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed, if either of the following apply:

"* * *

"(2) The supplier has knowingly committed an act or practice that violates this chapter."

Defendant contends that there is no evidence that it *knowingly* committed an act or practice that violated R.C. Chapter 1345. Our attention is invited to R.C. 1345.01(E) which defines "knowledge" as "* * * actual awareness, but such actual awareness may be inferred where objective manifestations indicate that the individual involved acted with such awareness." Neither in its decision nor in the journal entry which followed did the trial court make a specific finding as to the defendant knowingly committing a violating act.

The trial court, however, did comment, apparently favorably, on the case of *Rashid* v. *Cherokee Motors, Inc.* (Mar. 11, 1981), Hamilton C.P. No. A8006561, unreported, wherein the court held that "[t]he 'supplier' need not have knowingly violated the Act, it need only have knowingly committed the act or practice which was found to violate the statute."

We approve of the law as stated in *Rashid, supra,* since it conforms to the statute. One can knowingly do an act without knowing that the act is in violation of the law. This holding simply supports the ancient maxim: *Ignorantia legis neminem excusat.*

The evidence supports the conclusion that defendant knowingly committed a violating act, per the testimony of defendant's principal stockholder:

"Q. It was no accident that the Two Hundred Dollars ($200.00) was not given back to Ms. Brooks, correct?

"A. Correct.

"Q. You knowingly and intentionally made the decision not to refund the money, correct?

"A. Correct.

"Q. Just as when the dealership attempted to deliver the vehicle to her, it was knowingly and intentionally attempting to deliver an automobile that had been the subject of damage and two repairs, trying to deliver that as a new car under its contract to do so, correct?

"A. Absolutely."

Defendant's fifth assignment of error is not well-taken.

In her cross-assignment of error, plaintiff argues that the allowance of a fee of only $2,500 for 123.2 hours of work is an abuse of discretion, and fails to carry out the intent of the General Assembly as expressed in the purpose clause of Am. Sub. H. B. No. 681, the 1978 amendment to the Consumer Sales Practices Act (which bill provided for, *inter alia,* the enactment of R.C. 1345.09[F]):

"* * * to provide strong and effective remedies, both public and private, to assure that consumers will recover any damages caused by such acts and practices, and to eliminate any monetary incentives for suppliers to engage in such acts and practices." (See 137 Ohio Laws, Part II, 3219 and 3227-3228.)

Plaintiff would construe the foregoing paragraph as authorizing the court to consider penalty provisions when assessing attorney fees. In our opinion, the treble damage provisions of the Act itself are the punishment provisions. All R.C. 1345.09(F) calls for is "reasonable attorney's fee[s]."

It is well-settled that where a court is empowered to award attorney fees by statute, the amount of such fees is within the sound discretion of the trial court. Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere. The trial judge which participated not only in the trial but also in many of the preliminary proceedings leading up to trial has an infinitely better opportunity to determine the value of services rendered by lawyers who have tried a case before him than does an appellate court.

Accordingly, the decision of the trial court insofar as it covers attorney fees for the *nisi prius* trial procedures will be affirmed. The question of fees for plaintiff's counsel's appellate court work was not considered by the trial court and is not properly before this court. Plaintiff's cross-assignment of error is not well-taken.

## VI

In its final assignment of error, defendant asserts as plain error the constitutionality of R.C. 1345.02 and 1345.09. Defendant's reference to plain error indicates that the constitutional issue was not raised in the trial court, and ordinarily under such circumstances the matter will not be considered on the appellate level. *Republic Steel Corp.* v. *Bd. of Revision* (1963), 175 Ohio St. 179 [23 O.O.2d 462]. While defendant asserts plain error, and while it argues the constitutional question, it does not in any way explain to us what it believes constitutes "plain error, " and in what way the facts of this case bring it within the purview of that concept. In the absence of plain error, we should not consider the merits of this assignment of error.

In *State* v. *Craft* (1977), 52 Ohio App. 2d 1 [6 O.O.3d 1], the constitutionality of a criminal statute was put forth for the first time on appeal. In refusing to consider whether the statute in question was constitutional, the Hamilton County Court of Appeals pointed out that the exception to the general rule that an appellate court will consider only such errors as were preserved in the trial court must be exercised cautiously. *Id.* at 5. That court held that "plain error" must be "obvious error" which "* * * involves a matter of great public interest having substantial adverse impact on the integrity of and the public's confidence in judicial proceedings. * * *" *Id.* at 7. In view of the presumption covering the constitutionality of any statute, error with regard to the constitutionality of a statute clearly cannot be obvious. Accordingly, we hold that no "plain error" question has been presented to us. Defendant's sixth assignment of error is therefore overruled.

Finding that none of the defendant-appellant's assignments of error are well-taken, the judgment of the Franklin Municipal Court insofar as those assigned errors are concerned will be affirmed. Plaintiff-cross-appellant's assignment of error is overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

KOEHLER and ZIEGEL, JJ., concur.

HENDRICKSON, P.J., dissents.

ZIEGEL, J., retired, of the Court of Common Pleas of Preble County, was assigned to active duty pursuant to Section 6(C), Article IV, Constitution.

HENDRICKSON, P.J., dissenting. A review of the proceedings in the trial court discloses a number of errors, among which are the following.

In appellant's first assignment of error, defendant contends that the trial court lacked subject matter jurisdiction over the case at issue. The question of

subject matter jurisdiction was raised in the trial court prior to the commencement of trial and, although it is beyond question that the trial court had subject matter jurisdiction, venue was not proper. Consequently, defendant's motion to dismiss for want of subject matter jurisdiction should have been considered as a motion for change of venue. If the trial court would have considered defendant's motion as a motion for change of venue, it is apparent from the record that the Lebanon Municipal Court was the proper forum for the reason that the contract to purchase was entered into in Lebanon, plaintiff was in Lebanon when defendant denied that there was any damage to the vehicle, and plaintiff was at defendant's place of business when defendant refused to make the refund. Thus, the telephone conversations which the trial court found controlling were merely incidental to the events which gave rise to this action. Therefore, although defendant mistakenly confuses jurisdiction with venue, the trial court should have ordered a change of venue. Thus, this cause should be reversed for that reason and the trial court should be instructed to transfer the cause to the Lebanon Municipal Court as provided in Civ. R. 3(C)(1).

Defendant's second assignment of error should also be sustained in that the instructions to the jury were given substantially as submitted to the trial court by plaintiff and appear to be plaintiff-oriented. For example, when describing as a deceptive practice the furnishing of what is represented to be new or unused when such is not the case, the court gave the instruction that " 'used' includes rebuilt, remanufactured, or reconditioned goods or parts of an item or goods." The evidence established only that certain repairs were made to the vehicle. Thus, this portion of the instruction should not have been given. Therefore, even a cursory examination of the charge to the jury reveals prejudicial error and appellant's second assignment of error should be sustained.

Defendant's third assignment of error should also be sustained in that a remittitur should have been granted. Although plaintiff sets forth six separate claims in her complaint, the fifth claim was withdrawn prior to submission of the case to the jury and it appears that the two claims which merited consideration by the jury were the taking of a deposit without issuing a proper receipt and the failure to deliver goods, or make a substitution or a refund within eight weeks. As there was no request in the complaint for damages for loss of bargain, the only damages appear to be the retention of the $200 deposit plus the interest thereon, but the judgment far exceeds that amount. In fact, even if the penalty provisions of R.C. 1345.09(B) are found to be applicable, the judgment far exceeds the sum which may be recovered after rescinding the contract.

Furthermore, defendant's fifth assignment of error should also be sustained in that the award for attorney fees is excessive. In fact, it is so unreasonable as to be unconscionable. Plaintiff's attorney spent many hours on this case and caused defendant's attorney to do likewise, but such extensive time was totally unnecessary and unjustified as this should have been a simple case for the recovery of damages after plaintiff chose to rescind the contract of purchase.

Plaintiff in this case appears to have taken the position that when you attempt to collect attorney fees for consumer fraud, the sky is the limit. Many of the questions raised in the interrogatories were not germane to the real issue. For example, statistics on the sale of new and used cars were irrelevant, yet defendant was compelled to make these disclosures. Also, there was an

unreasonable number of interrogatories submitted for what should have been a simple case.

Furthermore, the award for attorney fees should be reversed if for no other reason than the fact that one of the bases upon which the award was made by the trial court was that the award "acts as an additional sanction against the person who violates the provisions of the act in question." R.C. 1345.09(F) authorizes the award of *reasonable* attorney fees. Thus, the trial court based the award upon a misconception, as the award of attorney fees on the premise that it is an additional sanction creates the impression that counsel for the plaintiff may spend endless hours working to prepare a minor case, running up charges that plaintiff's counsel would never have considered billing to plaintiff, but may bill defendant as punishment for violation of R.C. Chapter 1345 and the sections of the Administrative Code enacted pursuant thereto. See *Fay Gardens Mobile Home Park* v. *Newman* (1983), 14 Ohio App. 3d 144.

Therefore, the case having been tried in the wrong forum, the amount of the judgment and the amount of the attorney fees being excessive, the decision of the trial court should be reversed.