Plaintiff-appellant, Margaret Arales, appeals in this accelerated appeal from an order of the trial court granting summary judgment in favor of defendants-appellees, Furs by Weiss, Inc., its president, Howard Weiss, and its salesperson, Edie Magduff.
This action involves a consumer complaint concerning a fur coat. Plaintiff alleged that defendants either committed "fraud and deception" by selling her a used fur coat as if it were a new fur coat, or committed "theft" by substituting a used fur coat for the new fur coat she purchased after she had delivered the coat she brought to the furrier for storage. At the time of the sale, she agreed to pay $2,673.93 for the fur coat, made a down payment of $500, and financed the remaining balance.
Defendants filed a motion for summary judgment supported by answers to interrogatories and two fur storage receipts. Defendants' motion argued they did not purposely mislead plaintiff, that she failed to support a claim for infliction of emotional distress, that the individual defendants were not liable, and that the fur storage receipts limited defendants' liability to a maximum of $100.
They later supplemented their motion, after the established dispositive motion deadline, with affidavits by Weiss and Magduff. The affidavits stated the two individuals simply acted in their respective roles as president and employee of Weiss, Inc. during the transaction with plaintiff and did not engage in fraud. Each contained the following identical statement:
 At no time did I ever knowingly make any misrepresentation or false statements to Plaintiff, Margaret A. Arales, or otherwise engage in any scheme or plan to defraud her.
(Affidavit Paras. 2 and 3, respectively.) Neither affidavit contained a notary seal.
Plaintiff filed a brief in opposition supported by her own four-page affidavit, copies of a sales document and final payment check, a certificate of insurance completed by Magduff at the time of the sale, a copy of a fur storage receipt, a copy of a Better Business Bureau ("BBB") customer complaint, Weiss' response to the BBB complaint, and a copy of a fur appraisal. The appraisal certificate was not made under oath.
Plaintiff testified at length concerning the circumstances of the purchase, the initial storage and return of a coat, efforts to resolve her dispute with defendants, and discovery of the monogram of a previous owner hidden behind the lining of the coat. Her affidavit began by stating:
 My intention was to purchase a brand new, never before sold, worn, or used mink fur coat. There was no visable [sic] section of the store where used or previously owned and worn mink fur coats were for sale. There were no signs posted giving notice that the store sold used fur coats. Neither Weiss nor Magduff told me they sold used mink fur coats. I have been informed of Weiss' statement that his company does not sell used fur garments.
(Affid. Para. 2.)
Two months later, when she placed the coat in storage with the furrier, the storage receipt completed described the item as a "New Garment." (Affid. Para. 3.) Plaintiff stated that when she requested that the coat be returned to her seven months later, the coat that was given to her was not the coat that she had purchased. "The fur pelts were separating and had a flat, worn appearance. The coat had a dull look unlike the coat I purchased * * *." (Affid. Paras. 5 and 6.) After returning this "old, worn" coat to the furrier, it was returned to her again and defendants insisted that it was the coat that she had purchased and stored. (Affid. Paras. 7 and 8.)
She thereafter closely inspected the coat:
 I pulled a thread from a seam in the lining of the coat, and opened it up. To my great surprise and anger, inside was the monogram of another lady. It reads "Luiza Yankovsky". I contacted Mrs. Yankovsky, and took the garment to her to examine. She told me that she had purchased that coat from Furs By Weiss, Inc. also in 1996.
(Affid. Para. 9.)
Defendants filed a reply brief in support of their motion for summary judgment which made various additional arguments. They argued that the coat sold and returned to plaintiff was "new" and not "used." Their brief stated:
 Most consumers are aware that garments are traditionally sold in the retail clothing business as "new" so long as they are in "new" condition. Patrons are typically allowed to return items within a day or two so long as the merchandise has not been damaged in any manner and the original tags are still attached.
(Id. at p. 2.) In support of this argument, defendants appended an unauthenticated copy of a sales receipt which stated "NO RETURNS WILL BE ACCEPTED AFTER 5 DAYS FROM THE DATE OF PURCHASE." Defendants also claimed that plaintiff suffered no damages because the appraisal certificate she submitted, which they complained had not been made under oath, appraised the value of the coat at more than plaintiff paid for it.
The trial court granted summary judgment for defendants, stating as follows:
 DFDTS' MOTION FOR SUMMARY JUDGMENT IS WELL TAKEN AND GRANTED AS PLAINTIFF HAS FAILED TO PLEAD AN APPROPRIATE ACTION. PLAINTIFF CANNOT RECOVER FOR DEFENDANT'S [SIC] ALLEGED LARCENY BY TRICK AND GRAND THEFT AS THIS COURT CANNOT PROVIDE A REMEDY. THERE IS NO GEUNUINE [SIC] ISSUES [SIC] OF MATERIAL FACT AS TO FRAUD AS PLAINTIFF HAS FAILED TO PROVIDE ANY EVIDENCE OF FRAUD. THE ISSUES OF INDIVIDUAL LIABILITY AND WHETHER THE TERMS OF THE STORAGE RECEIPTS ARE UNCONSCIONABLE ARE THEREFORE MOOT. PLAINTIFF'S CLAIM FOR EMOTIONAL DISTRESS FAILS BECAUSE PLAINTIFF HAS FAILED TO OFFER EVIDENCE THAT THE DEFENDANTS' "CONDUCT WAS SO EXTREME AND OUTRAGEOUS AS TO GO BEYOND ALL POSSIBLE BOUNDS OF DECENCY." SEE, DICKERSON V. INTL. UN. AUTO WKRS. UNION (1994), 98 OHIO APP.3D 171. FURTHER, PLAINTIFF HAS FAILED TO PROVIDE EVIDENCE THAT SHE SUFFERED A SERIOUS AND DISABLING INJURY AS A RESULT OF AN INTENTIONAL ACT. ID.
Plaintiff timely appeals in this accelerated appeal from the summary judgment against her, raising the following two related assignments of error:
 I. THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEES' MOTION FOR SUMMARY JUDGMENT BECAUSE PLAINTIFF-APPELLANT DID PROVIDE SUFFICIENT EVIDENCE OF GENUINE ISSUES OF MATERIAL FACTS AS TO FRAUD PRACTICED BY DEFENDANTS-APPELLEES.
 II. THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEES' SUMMARY JUDGMENT MOTION BECAUSE PLAINTIFF-APPELLANT PROVIDED SUFFICIENT PROOF OF GENUINE ISSUES OF MATERIAL FACTS AS TO CONVERSION PRACTICED BY DEFENDANTS-APPELLEES.
These assignments are well-taken.
Plaintiff argues the trial court improperly granted summary judgment because she presented evidence that defendant committed fraud or conversion by selling, or substituting, a used fur coat for a new fur coat. For the reasons set forth below, we agree.
Initially, we note that defendants and the trial court construed plaintiff's complaint too narrowly. Parties are not required to plead, and are not held to, specific legal theories of recovery. Rather, it is sufficient to allege facts as in this case, which, if proven, establish their claim for relief.E.g., Langham v. Illinois Controls, Inc. (1994), 70 Ohio St.3d 512
:
 Civ.R. 8(A) requires only that a pleading contain a short and plain statement of the circumstances entitling the party to relief. A party is not required to plead the legal theory of recovery or the consequences which naturally flow by operation of law from the legal relationships of the parties. "The rules make clear that a pleader is not bound by any particular theory of a claim but that the facts of the claim as developed by the proof establish the right to relief."
Id. at 525-526 (citations omitted.)
When viewed in this light, plaintiff's particular allegations of "fraud and deception" were sufficient to raise claims for violating the Ohio Consumer Sales Practices Act ("CSPA") which specifically governs consumer claims such as those asserted in this case. R.C. Chapter 1345. Plaintiff's allegations raise classic textbook consumer claims that defendant sold used goods as if they were new or later substituted used goods for new items she had purchased. A significant purpose of the CSPA is to reduce the formal technicalities associated with common law tort claims in cases involving unfair, deceptive, or unconscionable acts or consumer sales practices.
In any event, as noted by the trial court, plaintiff's particularized claim, expressly denominated as one of "fraud," was sufficient under Civ.R. 9(B) to state a claim for relief of common law fraud. Moreover, her claim of "theft," together with her other specific allegations, was sufficient to state a claim for common law conversion for substituting a used coat for the new coat she allegedly delivered to the furrier for storage. Defendants were aware of the specific nature of plaintiff's allegations, responded to them, and never filed a motion for a more definite statement to clarify the scope of plaintiff's claims.
Defendants argue that plaintiff's claims sounded like criminal charges. This argument, which the trial court adopted, ignores that plaintiff was also seeking punitive damages, which require establishing actual malice. In Craig v. Spitzer Motorsof Columbus, Inc. (1959), 109 Ohio App. 376, a case involving claims of misrepresentation in connection with the sale of a used vehicle, the Court stated as follows:
 The allegations state facts, which, if contained in an affidavit or indictment in a criminal action for obtaining property by false pretenses or larceny by trick, would be sufficient to sustain such charge. The necessary elements to sustain a claim for punitive damages, as well as compensatory damages, are sufficiently pleaded to require the defendant to answer and meet the issues by evidence.
Id. at 382. As in Craig, it is not surprising that plaintiff's claims could be mistaken as criminal charges, for she was asking that defendants be punished insofar as she sought punitive damages. Accord Saberton v. Greenwald (1946), 146 Ohio St. 414, holding that punitive damages were recoverable for the fraudulent sale of a reconditioned watch as a new watch.
Finally, plaintiff's allegations concerning the mental and other frustrations and burdens imposed upon her are recoverable to the extent that they are compensable elements of damages arising from her other tort and punitive damages claims. Contrary to defendants' arguments and the trial court's opinion, such damages are not recoverable exclusively by asserting and proving separate claims for infliction of emotional distress.
The standard for granting summary judgment is well established. Summary judgment should not be granted unless, after reviewing the evidence and reasonable inferences therefrom in the light most favorable to the non-moving party, there is no genuine issue of material fact, reasonable minds can come to only one conclusion, and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Summary judgment should be awarded with caution and doubts should be resolved in favor of the non-moving party. E.g., Norris v. OhioStd. Oil Co. (1982), 70 Ohio St.2d 1, 2.
After reviewing the record in compliance with this standard, we conclude that the trial court erroneously granted summary judgment in this case. Plaintiff presented sufficient evidence to raise genuine issues of fact concerning her common law claims of fraud and conversion, as well as the less stringent standard of unfair, deceptive and/or unconscionable acts or consumer sales practices under R.C. Chapter 1345.
The trial court's conclusion that plaintiff "failed to provide any evidence of fraud" is incorrect. We agree with the trial court that there was no evidence of any oral misrepresentation. However, there is evidence, when viewed in the light most favorable to plaintiff, from which a jury could reasonably infer fraudulent concealment of the fact that the fur coat had previously been owned by another customer before it had been sold to her: The lining of the coat had been altered to conceal the monogram of the previous owner.
Defendants argue that "most consumers" are aware that clothing which has been returned in the retail clothing business may be sold as new as long as it remains in new condition. They presented no evidence to support this claim. It is not clear, moreover, that fur coats are typical of the "retail garment business" because of the significantly higher cost, the use of installment financing arrangements, and the fact that a security interest is retained in such goods. In any event, however, there is evidence that the fur coat in this case was not returned in its "new" condition: it bore the monogram of a prior owner which it did not possess when manufactured and before the first time it was sold.
A reasonable jury could find all elements necessary to support plaintiff's claims. When viewed in the light most favorable to plaintiff, the record contains evidence of an affirmative act to hide the truth concerning the prior ownership. The monogram of the prior owner was concealed by altering the lining in a way that reasonable inspection — without taking the coat apart — would not reveal. Prior use of an article of personal clothing may be relevant to its value. The jury could infer that defendants had superior knowledge and means of ascertaining the truth because they sold the same coat more than once. Plaintiff testified that she would not have purchased the coat if she had known it had been previously owned, used, or worn by someone else. Finally, at a minimum, plaintiff suffered damages to the extent she did not receive what was held out to her as a new coat, she paid any additional incidental expenses such as finance charges and sales taxes, and she suffered consequential losses such as expert appraisal fees.
Defendants' arguments to the contrary are unpersuasive. First, courts have held under similar circumstances, that the question of whether the item sold was "new" or "used" is for the jury. See e.g., Brooks v. Hurst Buick-Pontiac-Olds-GMC
(1985), 23 Ohio App.3d 85, 89. Second, although defendants deny any fraudulent intent, the existence of such an intent may be inferred from the circumstances and is a question for the jury. E.g., Mills v. Manse (1987), 41 Ohio App.3d 361, 364-365. Third, even if the market value of the coat appreciated after the sale — as shown in an appraisal to which defendants objected but purport to rely upon — this does not establish that plaintiff suffered no damages. E.g., Buchanan v. SpitzerMotor City, Inc. et al. (Feb. 7, 1991), Cuyahoga App. Nos. 57893 and 58058, unreported at pp. 5-6.
It was likewise erroneous to enter judgment against plaintiff on her claim of conversion arising from the alleged substitution of the used coat for the new coat placed in storage. The record contains evidence from which a jury could reasonably infer that her property was retained by the furrier without her consent. If the coat originally sold to plaintiff was "new" as defendants contend, the jury could reasonably infer that the coat returned to her was not the same one if they find it to be a "used" coat.
Defendants' brief on appeal argues two remaining points which the trial court found to be moot after granting summary judgment for defendants. Because we find the trial court committed reversible error by granting summary judgment for defendants, we shall address these arguments as cross-assignments of error under R.C. 2505.22 to determine whether they would prevent reversal of the trial court's judgment.
The individual defendants contend that the trial court properly granted summary judgment in their favor because they were merely acting for the corporation, Furs by Weiss, Inc.[1] This argument lacks merit for two reasons. First, their affidavits lacked notary seals and were, therefore, technically deficient, like the unsworn fur appraisal they complained about submitted by plaintiff. More importantly, however, corporate actors may be personally liable for tortious acts they commit, direct, or participate in during the course of their employment. E.g., id., State ex rel. Fisher v. American Courts,Inc. (1994), 96 Ohio App.3d 297, 300, citing Young v.Featherstone Motors, Inc. (1954), 97 Ohio App. 158, 171. Plaintiff's affidavit reveals that both Weiss and Magduff personally participated in the transaction.
Finally, defendants also argue that the pre-printed storage receipts signed by plaintiff limit their liability for damages in this case. The bottom of each form contains the following statement:
 CUSTOMER SPECIFICALLY AUTHORIZES ANY AND ALL OF THE NECESSARY WORK DESCRIBED MAY BE PERFORMED BY INDEPENDENT CONTRACTORS. OUR LIABILITY FOR LOSS OR DAMAGE FROM ANY CAUSE WHATSOEVER, INCLUDING OUR OWN NEGLIGENCE OR THAT OF EMPLOYEES AND OTHERS, IS LIMITED TO THE DECLARED VALUATION AS IT APPEARS IN THE VALUATION COLUMN. BY SIGNING THIS RECEIPT, YOU AGREE TO WAIVE ANY CLAIMS AGAINST WEISS IN EXCESS OF SUCH DECLARED VALUATION. * * *
Defendants argue that this provision, executed for the first time three months after the original sale and at the time of placing the coat into the furrier's custody, limits the damages recoverable for any fraud in the sale or subsequent conversion of her coat.
We note initially that the forms in this case contain a preprinted valuation of $100.00. Thus even if defendants' argument were persuasive, it would not prevent reversing the judgment of the trial court that they had absolutely no liability. More importantly, however, defendants have not cited any authority enforcing such a provision to limit the liability of any person who is found to have committed intentionally, tortious misconduct.
The Ohio Supreme Court has recognized to the contrary that limitations of liability are enforceable absent wilful and wanton misconduct. E.g., Berjian v. Ohio Bell Telephone Co.
(1978), 54 Ohio St.2d 149, syllabus paragraph two. This court has likewise recognized that, even when parties negotiate and execute a release after becoming involved in a dispute, instead of a pre-printed form, the question of "[w]hether the parties to a release intended to discharge, inter alia, liability arising from claims in fraud, the existence of which one party typically will have been ignorant, is a question of fact to be resolved at trial." Friedman v. Lipman (1980), 68 Ohio App.2d 255,260. Under the circumstances, defendants have offered nothing to show that the storage receipts can reasonably be construed or applied to limit liability for prior undiscovered fraud or the risk of conversion by a defendant while in its custody.
Accordingly, plaintiff's two assignments of error are sustained and defendant's cross-assignments are overruled.
Judgment reversed and case remanded for further proceedings.
This cause is reversed and remanded for further proceedings.
It is, therefore, ordered that appellant recover of appellees her costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 __________________________________________ PATRICIA A. BLACKMON, ADMINISTRATIVE JUDGE
 __________________________________________ ANN DYKE, JUDGE
 __________________________________________ DIANE KARPINSKI, JUDGE
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 27. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E) See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] Documents and pre-printed forms sometimes refer to "Furs by Weiss, Inc.," "Furs by Weiss," "Weiss, Inc.," and simply "Weiss."