JOURNAL ENTRY AND OPINION
Plaintiff-appellant Margaret Arales appeals a jury verdict in favor of defendants Furs by Weiss, Howard Weiss, and Edie Magduff.
Appellant Arales (customer) bought a mahogany mink fur coat on sale from defendants (merchant) for $2,500. Customer claimed she wore the coat only once prior to having it cleaned, stored for the summer, and monogrammed by merchant. Upon receiving the coat back from merchant the following winter, customer claims that she was given a different, older and worn coat. Customer confronted owner who assured her it was the same coat. She returned home with the allegedly substituted coat.
Customer took the coat to several fur experts who appraised the coat at between $6,500 and $7,000. Customer noticed that the lining of the coat had been altered, and after investigating the lining, customer discovered the monogram of another woman's name hidden in the lining. Merchant informed her that this coat had originally been purchased by another woman a few months before customer bought it. The first purchaser of the coat never took it out of the store; she had left it behind to be monogrammed. The day after she bought the coat, the first purchaser canceled the transaction. Merchant's workroom did not receive notice of the cancellation of the order, however, and they proceeded to monogram the first purchaser's name into the lining of the coat. When merchant discovered the error, he had the workroom alter the lining of the coat to cover the monogram because it could not be removed without leaving telltale needle marks in the lining. Replacing the lining would have cost approximately $75.00. Customer filed suit against merchant for fraud and the equivalent of conversion.
Merchant moved the trial court for summary judgment, which the court granted. That dismissal was overturned on appeal, and the case was heard by a visiting judge. The transcript reveals that the visiting judge did not receive any information on the case until the day of trial.
Customer's second amended complaint contains two counts, the first alleging a violation of the Ohio Consumer Sales Practice Act (CSPA) for both selling her a used coat and for returning a different coat to her. The second count of the complaint alleges fraud for selling her a used coat as new and requests emotional damages. Appellant also requests punitive damages, attorney fees, and costs.
Before voir dire, the court and the attorneys discussed on the record customer's demands for emotional damages. Merchant's counsel had filed two motions in limine concerning this issue. Customer's attorney had failed to respond to one of these motions by the morning of trial. Moreover, the court had decided that customer's emotional damages depended on the allegation that the coat was switched in storage.[1] So the court suggested bifurcating the trial between liability and damages issues. The attorneys agreed to bifurcate the trial, but merchant's attorney and the court understood the agreement to state that only the issue of whether the original coat was switched for another one would be tried. Customer's attorney, on the other hand, understood that all the liability issues in the complaint would be tried. Furthermore, the court referenced both the fraud and the conversion issues in the side bar discussion with the attorneys, and the customer's attorney addressed both issues in his opening statement. Because of this confusion, the issue of whether the coat was new or used at the time customer bought it went unresolved.
Customer's attorney failed to submit a jury charge, and the court refused to allow him to add either a charge or an interrogatory on fraud. The only reference to fraud in the jury charge was a statement that Ohio law considers an item new if it has never left the store or been used.
The jury returned a verdict for merchant. The verdict form simply stated
 We the jury, being duly impaneled, do hereby find in favor of () Plaintiff, Margaret Arales, or (X) Defendants, Furs by Weiss, Inc., Howard Weiss and Edie Magduff.
It was signed by all eight jurors.
Customer filed a motion for new trial, which was denied by the court. Customer then timely filed this appeal. For her first assignment of error, appellant states
 I. THE TRIAL COURT ERRED BY INITIATING, ENCOURAGING, AND ALLOWING A SPECIAL VERDICT TO BE RENDERED BY THE JURY IN VIOLATION OF RULE 49(C) OF THE OHIO RULES OF CIVIL PROCEDURE.
Civ.R. 49(C) abolishes special verdicts. Rather, [a] general verdict, by which the jury finds generally in favor of the prevailing party, shall be used. Civ.R. 49(A). Customer claims that by focusing the trial on the single issue of whether the coat had been switched, the court was in essence creating a special verdict. She states in her brief that as her counsel became aware that the court was proceeding with a special verdict, he objected. The record shows, however, that his objection was to the court's refusal to address the new/used issue, not to a special verdict. The trial court noted his exception and preserved his objection to the limited scope of the trial for appeal.
Nowhere in the transcript does customer's counsel refer to a special verdict. He does request the court to address the issues in both counts of the complaint, but he never claims that the court is violating Civ.R. 49(C). The verdict form returned by the jury is a general verdict form which clearly disposes of the entire case. Nothing on the form indicates that it is limited to only some of the trial issues. While the court limited its jury instructions to the issue of whether the coat was switched, it also stated in its instructions that [u]nder Ohio law returned goods which have not been used by a previous purchaser must be considered as new or unused. Tr. at 527. The court also limited the parties' closing arguments to the issue of whether the coat had been switched. The transcript reveals, however, that the court believed that the attorneys had agreed to limit the litigation to the one issue and restricted the trial for that reason. Nothing in the transcript or file indicates a special verdict.
 Because appellant has provided no evidence that the court initiated or allowed a special verdict in this case, the first assignment of error is overruled. For her second assignment of error, appellant states
 II. THE TRIAL COURT ERRED BY FAILING TO BRING TERMINATION TO THE ACTION AS TO ANY OF THE PARTIES OR CLAIMS IN VIOLATION OF RULE 54(B) OF THE OHIO RULES OF CIVIL PROCEDURE.
Civ.R. 54(B) states [w]hen more than one claim for relief is presented in an action * * *, the court may enter final judgment as to one or more but fewer than all the claims * * * only upon an express determination that there is no just reason for delay. In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims * * *, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before judgment adjudicating all the claims and rights and liabilities of all the parties.
Customer claims that because the court did not allow her to litigate the issue of whether the coat was sold as new when it was used, not all of the claims in her complaint were litigated. There is no question that the court did not allow her to litigate the second issue of fraud and the corresponding issue under CSPA during the trial.
The pertinent question becomes whether the customer waived her right to raise this issue because of the agreement of counsel and the court. A review of the transcript reveals confusion in the discussion regarding whether the court was limiting the trial to this issue when it bifurcated the trial. There is some discussion on the record to indicate that the court understood that it was limiting the trial to this issue; the court's language, however, could be interpreted to mean that it intended to resolve both issues concerning the coat and reserve the issue of damages for a second trial if needed.
Just before the trial began, the court said:
 This case hinges on the question of whether or not this coat was new or used when [customer] bought it. That's the bottom line question, as the kids would say, bottom line.
(Tr. at 29. Emphasis added.) Shortly after this statement, the court describes the question differently.
 THE COURT: If a jury finds that the coat that was sold to Mrs. Arales * * * [a]nd the coat she has today is one and the same coat; namely was it new when she bought it.
 MR. JOHNSON: That's the argument here, Judge. See, Mr. Weiss and Mr. Garson are contending that the coat she has here today is the coat they sold her in the first place.
THE COURT: Why don't we try that aspect of the case.
 MR. JOHNSON: She says no this coat she has today is not the one.
 THE COURT: I understand that. Now, if a jury finds that the coat that she has today is the same coat that Mr. Weiss or Mrs. Magduff sold to her back in 1996, then the question of emotional distress or expenses to New York is all moot.
 If, on the other hand, the jury finds that the lady, that there is a conversion or a fraud, it's not the coat — let's keep it in simple terms — if the coat she had today is not the same coat, then we go to the question of emotional distress.
MR. JOHNSON: So you're suggesting bifurcation?
THE COURT: Yes.
(Tr. 34-35. Emphasis added.)
There is confusion from the beginning and throughout the record on precisely what the issues were that everyone agreed upon for trial. In the excerpts cited above, the court first describes the central issue as whether the coat was new when sold. Then the court restates the issue as whether the coat returned was the same coat. This second question goes to the issue of conversion, that is, whether another coat was substituted. However, in the same sentence the court goes on to restate the question (as indicated by the word namely) as whether the coat was new when she bought it. This question goes to the issue of fraud. Then a few lines later, the judge appears to be choosing the issue of conversion as the sole question for trial.
However, the court does not emphatically exclude fraud at this point. Rather the focus of the colloquy turns to damages. Thus it is not clear that what plaintiff's attorney agreed to was merely the bifurcation of damages, rather than the bifurcation of damages in addition to the exclusion of the issue of fraud.
A few minutes later the court specifies the award depends first on whether the coat was the same, but then the court includes both the conversion and fraud claims.
At the end of the discussion, the court stated:
 why don't we find out whether the coat is the same coat. The now [sic] coat is the same coat that was sold. And if it wasn't, if it was the same coat, everybody will have to go in peace, there will be no award.
 If it's a different coat or if in some way there was conversion or a fraud committed by Weiss/Magduff, then we'll go to emotional distress, if appropriate * * *. And I trust that it's clearly understood that throughout this what will now be a brief trial, the only question will be the coat, period.
Tr. at 46-47. (Emphasis added.)
Indeed, after the trial the same confusion arises again.
 MR. JOHNSON: I'd like to have a charge to the jury on the elements of fraud. That's number —
 THE COURT: We discussed that in chambers yesterday. The answer is no. We're only going to decide the question of the coat.
(Emphasis added. Tr. 514-515). Again, the court appears to mistakenly merge the issue of fraud with damages and fails to see the question of the coat includes two issues: (1) whether the coat was new when it was sold (a question going to fraud) and (2) whether the coat was the same when it was returned later from storage (going to conversion).[2]
Because of the continuing confusion on what the question of the coat includes, we cannot say that customer clearly waived her right to try the issue of fraud to the jury.
In closing arguments, plaintiff summarized evidence (1) that Mr. Weiss and Edie Magduff had a practice of concealing monograms and making some changes in fur coats before selling them as brand new coats; (2) that a fur expert testified denying that a coat was new if altered; and (3) that plaintiff was unaware the coat she bought had the lining shortened and altered. This evidence goes to the issue of fraud.
Although apparently having decided to try the case on the issue of only conversion, the court in its charge to the jury unexpectedly gives the jury the following statement of law: Under Ohio law returned goods which have not been used by a previous purchaser must be considered as new or unused. (Tr. 527.) Such a statement would be proper if used were the question to decide under fraud. Here, however, the facts show the coat was altered from its original condition when the name of another customer was embroidered into the lining. To ignore this claim in the statement of law is to mislead the jury.
Many states make it deceptive practice for a person, in the course of his business, to represent that goods are original or new if they * * * are altered * * *. 59 A.L.R.4th 1192 at *2a. This is not the first time this court has addressed this issue. As this court stated in the first appeal in this case, Defendants argue that most consumers are aware that clothing which has been returned in the retail clothing business may be sold as new as long as it remains in new condition. * * * It is not clear * * * that fur coats are typical of the retail garment business because of the significantly higher cost, the use of installment financing arrangements, and the fact that a security interest is retained in such goods. In any event, however, there is evidence that the fur coat in this case was not returned in its new condition: it bore the monogram of a prior owner which it did not possess when manufactured and before the first time it was sold. Arales v. Weiss (Jan. 21, 1999), Cuyahoga App. No. 74301, unreported, 1999 Ohio App. LEXIS 125, at *11. As we also stated in that case, courts have held under similar circumstances, that the question of whether the item sold was new or used is for the jury. See e.g. Brooks v. Hurst Buick-Pontiac-Olds-GMC (1985), 23 Ohio App.3d 85,89 * * *. Second, although defendants deny any fraudulent intent, the existence of such an intent may be inferred from the circumstances and is a question for the jury. E.g. Mills v. Manse (1987), 41 Ohio App.3d 361,364-365 * * *.
The court improperly ignored the fraud issue, therefore, when the court summarized the issue for the jury as follows:
 Now, ladies and gentleman, this is an action brought by the plaintiff against the defendants for the alleged conversion by the defendants of the plaintiff's property.
In other words, not returning the same coat. (Emphasis added. Tr. 527.) This statement ignores the second question of whether the coat was fraudulently sold as new and the parallel issue under CSPA.
Customer should have received an instruction that allowed for a garment that had been altered. The record shows that customer proceeded as if the issue of fraud was still in the case. For example, customer's attorney elicited testimony concerning whether the coat was considered new or used because of the monogram of the first purchaser in the lining. Customer's expert witness, Marie See, who is president of the Cleveland Fur Institute, testified that a coat with the monogram of another customer in the lining is considered a used coat. Merchant also offered testimony that it was standard practice to consider a coat altered in this manner as new.
Plaintiff unsuccessfully attempted to include interrogatories and jury instructions addressing the issue of whether the coat was new or used when it was sold to her. Because the record does not demonstrate plaintiff waived the issue of fraud, and because the jury was advised solely on the issue of conversion, we find appellant's second assignment of error has merit in part.[3]
For her third assignment of error, appellant states
 III. THE TRIAL COURT ERRED WHEN IT DENIED PLAINTIFF'S MOTION FOR NEW TRIAL.
Customer timely filed a motion for new trial, which the trial court denied. In her second assignment of error, customer argues that the court never resolved the issue of whether she was sold a used coat; because not all the issues were addressed, she should, therefore, have been granted a new trial. We agree.
This third assignment of error is affirmed.
For her fourth assignment of error, appellant states
 IV. PREJUDICIAL ERROR [sic] COMMITTED BY THE TRIAL COURT WHEN HE TOOK THE CASE AWAY FROM THE JURY, AND IN ESSENCE DECIDED IT HIMSELF.
Appellant claims that the trial court exhibited hostility toward her and her counsel and that he badgered customer during her testimony. Further, customer claims that the court's negative demeanor toward her and her counsel swayed the jury against her. First, body language is not discernible from a written transcript. The text of the transcript, however, reveals no undue behavior on the part of the court toward customer or her counsel. Customer's testimony was difficult to follow, both on direct and on cross. The court intervened several times to clarify either a question or an answer, but none of the language shows anything but an attempt to aid the proceedings.
Similarly, the court's behavior toward customer's counsel does not seem untoward. While the court chastised the attorney for being late for trial two days in a row and required an explanation in front of the jury, nothing else in the record indicates any other negative attitudes toward him or toward tardiness. By bifurcating the trial on the issues of liability and damages, the court actually tried to accommodate customer's attorney, who was unprepared to defend his claim for emotional distress against merchant's motion in limine. Customer's attorney had never filed a response brief to the motion in limine. In fact, it was because customer's attorney was not prepared that the trial was bifurcated in the first place.
The judge's alleged hostility did not take this case from the jury. The judge's failure to allow the jury to address the issue of whether the coat was used or new, however, did take that issue from the jury. Although the jury deliberated and returned a unanimous verdict in response to the testimony and jury charge, that jury charge excluded the new/used coat issue.
Accordingly, appellant's fourth assignment of error is affirmed.
For her final assignment of error, appellant states
 V. IRREGULARITIES IN THE PROCEEDINGS OF THE TRIAL COURT WHEN THE JUDGE MANIFESTED EVIDENCE OF POOR HEARING AND POOR EYESIGHT, WHICH ADVERSELY IMPACTED THE TRIAL AND RESULT (sic).
Appellant claims that the judge frequently requested questions and testimony be repeated because he could not hear the person speaking. She also claims that the judge could not see the clock and that, therefore, he could not preside over the trial properly.
A review of the transcript shows only two occasions when the judge asked for something to be repeated, whereas customer's attorney required that statements be repeated four times. Only once did the court ask someone to verify the time on the clock at the back of the courtroom. Inability to see a clock across a room does not constitute a serious visual problem. Nothing in the transcript indicates that the trial court had any difficulty following the proceedings because of sensory difficulties: in fact, the transcript reveals that the judge actively participated in the trial throughout.
Appellant's fifth assignment of error is overruled.
This case is reversed and remanded for trial on the remaining issues in the complaint.
This cause is reversed and remanded.
It is, therefore, ordered that appellant recover of appellees her costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, J., CONCURS; JAMES D. SWEENEY, J., CONCURS IN JUDGMENT ONLY.
[1] The court stated, if a jury finds that the coat that she has today is the same coat that Mr. Weiss or Mrs. Magduff sold to her back in 1996, then the question of emotional distress * * * is all moot. Tr. at 35.
[2] A few moments later the court says: Because we're not trying this case on conversion and fraud, your interrogatories aren't appropriate. (Tr. 516.) This sentence is a classic example of the inherently ambiguous nature of negative sentences. It is not clear whether the judge is saying we will not try the case on two issues but we will on one, or we will not try the case on either one. Of course, his voice, at the time might have provided the necessary clarity by emphasis.
[3] However, appellant's assignment of error erroneously states no claim was decided. In fact, the claim of conversion was decided.