98] *THOMAS STEWART AND JONATHAN CHAPLINE *v.* TREASURER OF CHAMPAIGN COUNTY, FOR USE OF JOHN McADAMS.

A *devastavit* by an administrator can not be suggested and proved, in a suit on administrator's bond, against the administrator and his securities.

THIS was a writ of error to a judgment of the court of common pleas, rendered against the plaintiff in error, in favor of the defendant in error. It was an action of debt brought upon an administration bond, the defendants being securities, and the writ, as against the administrators, being returned not found.

The declaration set out the granting of administration, and the execution of the bond. It then averred a judgment in favor of McAdams against the administrators, and that assets to a certain

amount had come to their hands, which they had wasted; but it contained no averment that any execution had issued on the judgment of the plaintiff against the administrators, or of any adjudication that they had wasted the assets. Judgment was rendered in the common pleas against the plaintiffs in error by default, to reverse which the writ of error was brought.

The errors assigned were:

1. That the record did not show that a *devastavit* had been established by action, or otherwise.

2. That it did not appear that any execution had been sued on the plaintiff's judgment against the administrators, before the commencement of this suit.

3. That the judgment was founded on a *devastavit*, and the record did not show that any *devastavit* was found by the court, the inquisition of a jury, or otherwise.

4. The general error.

MASON, for plaintiff.

ANTHONY, for defendant.

By the COURT:

The principal question to be decided in this case is, whether, in an action upon an administrator's bond, brought against the administrator and his securities, the fact of a *devastavit* by [99 the administrator can properly be put in issue and tried and determined. The statute 1 Hen. VIII., c. 5, directed the taking of surety for the true administration of goods, chattels, and debts. The statute of 22 and 23 Car. II., c. 10, commonly called the statute of distribution, declares " that all ordinaries and ecclesiastical judges, upon granting administration, shall take a bond of the administrator with two or more sureties, with condition that the administrator shall make a true and perfect inventory of all the goods and chattels of the deceased, and exhibit it unto the registry of the ordinary's court, by such a day, and to administer according to law; and to make a true and just account thereof; and to make distribution of the surplus." Under these statutes, much difficulty was experienced by the English courts in settling an uniform mode of establishing a *devastavit*.

Anciently, if the sheriff returned *nulla bona*, and also a *devastavit*

to a *fieri facias de bonis testatoris*, sued out upon a judgment obtained against an executor, it was sometimes the practice to sue out a *capias ad satisfaciendum* against the executor. Several other methods were devised, which need not be enumerated, as they have long since fallen into disuse. The practice in the common pleas was, upon suggestion, in the special writ of *fiera facias* of a *devastavit*, to direct the sheriff to inquire, by jury, whether the executor had wasted the goods, and if the jury found he had, then a *scire facias* was issued against him, and unless he made a good defense thereto, execution was awarded, *de bonis propriis*. It afterward became the practice of both courts to incorporate the *fieri facias* inquiry and the *scire facias* into one writ called a *scire fieri inquiry*. This writ recites the *fieri facias de bonis testatoris*, the return of *nulla bona* by the sheriff, and then, suggesting that the executor had sold and converted the goods of the testator to the value of the debts, commands the sheriff to levy the debt, etc., of the goods, etc., of the testator, in the hand of the executor, if they could be levied thereof; but if it should appear to him by the inquisition of a jury, that the executor had wasted the goods, then the sheriff is to warn the executor to appear, etc. This practice is still frequently adopted.

100] *But the most usual mode of proceeding is by action on the judgment, suggesting a *devastavit*. 1 Saund. 219, n. 8. A *fieri facias* is first sued out, and upon the sheriff's return of *nulla bona*, an action is commenced on the judgment, stating the judgment, the writ of *fieri facias*, and the sheriff's return ; and on the trial, the record, the writ, and return will be sufficient evidence to prove the case. And the action may be brought upon a bare suggestion of *devastavit*, without any writ of *fieri facias* first taken out. 1 Saund., n. 8, cited ; Wheatly *v.* Lowe, 1 Sid. 397. These modes of establishing a *devastavit* are well settled by the English practice. So far as can be discovered, no attempt has been made to fix a *devastavit* upon an administrator, by making a suggestion, in the suit against him and his securities, *upon their bond*. The administrator may traverse the inquisition as well as the return, and is entitled to the same defense. Gibson *v.* Brook Croke Eliz 859. It can not be disputed that this has been treated as a matter of practice, under the control of the court, as to which they can establish their own rules. 4 Conn. 445. The practice adopted in this country appears uniformly to be an action upon the judgment, suggesting a *devastavit*. 3 Hen.

& Munf. 123; 4 Munf. 466; 1 McCord, 76; 4 Conn. 445; 4 Bibb, 83. The practice, so far as can be ascertained in this state, is to sue upon the judgment making the suggestion. It is probable the provisions of our statute would make a difference in some instances, in the evidence on trial. During the time limited by the court for the settlement of estates, no execution can be issued upon a judgment rendered against an administrator. We are not, however, in this case, to determine what shall be *evidence* of a *devastavit*, under the provisions of our statute. By section 5 of the act "defining the duties of executors and administrators," it is provided that the court shall require the administrator to give bond, with two or more sufficient securities, conditioned for the faithful performance of the duties required of him by law. Section 11 declares that a refusal or neglect to settle up the estate shall be deemed a breach of the bond of the administrator. It is probable this was useless legislation, for one of the duties the law requires of the administrator is to adjust and settle up *his accounts, within eighteen [101 months from the date of his letters, unless the court shall extend the time.

If the non-performance of any duty, which the statute requires of an administrator, could be assigned as the breach of the condition of his bond, it is clear that this might, upon general principles, without any declaratory act. This cause was treated at bar as if the whole remedy, upon the bond against an administrator and his security, depended upon establishing or suggesting a *devastavit*.

It is not necessary now to decide whether the condition of an administrator's bond was only intended to protect heirs and creditors against a single malfeasance. The condition would, indeed, appear to secure the performance of every duty which the law enjoins on an administrator. Nor can this view of the subject disturb the authority of Treasurer of Pickaway County v. Hall, 3 Ohio, 225. That was an action on the bond of the administratrix, and the principal breach assigned was "that she had neglected and refused, though often requested, and demanded particularly on March 30, 1827, to pay the said Nicholas and Rebecca," for whose use the action was brought, "said Rebecca being one of the heirs of Joseph Glase, deceased, the proportion of moneys before that time, come to the hands of the administratrix, to which said Rebecca, as heir at law, was entitled."

The court say, "If the plaintiff claims as heir, he must show

91

how he makes himself so, that his right may judicially appear to the court, and the proportion due to him be ascertained." Again: "It is much the safer doctrine to require proceedings, first, against the administrator himself, and only allow resort to the surety, when nothing is to be contested but the question of payment." The questions considered by the court were: 1. Whether, in the declaration, the plaintiff had showed herself, with sufficient certainty, to be heir to the intestate. 2. Whether, admitting she was heir, she could sue upon the bond as distributee before settlement, and her proportion had been ascertained. The court never could have intended to be understood as deciding that no breach of the condition of the bond could be assigned, except non-payment to the distributees, nor that the bond could not be forfeited, so as to 102] charge the securities, until *final settlement. The legislature, without doubt, intended this bond as a security, not only for the heir, but for the creditors, and indeed all interested in a just administration of the estate. But this is aside from the consideration whether *devastavit* can be assigned in a suit upon the bond of the administrator. A creditor shall not take an assignment of the bond and sue it, and assign for breach the non-payment of debt as to him, or *deva stavit* committed by the administrator, for that would be needless and indefinite. Archbishop of Canterbury *v.* Wells 1, Salk, 315. The first proposition in this decision has been questioned, 13, Johns. 437; but it has received the sanction of the Supreme Court of Massachusetts, 9 Mass. 114; and so far as an authority upon the question under consideration, has never (that can be discovered), been doubted. In the case of the People *v.* Dunlap, the Supreme Court of New York do not expressly decide that *devastavit* may be suggested, upon a suit on the bond of the administrator; but rather seemed to permit the recovery, upon the ground, that the suggestion, under the statute, amounted to an assignment of a breach of the condition. The cases cited by that court are 1 Wash. 31, and 9 Mass. 114. If the object in citing these authorities was to maintain the proposition, that in a suit on the administrator's bond a *devastavit* might be suggested, they furnish no authority to support it. In neither of those cases is there any such suggestion. The wasting of the estate is in itself a tort. It is contrary to the oath of the administrator, and the trust and confidence reposed in him. To the suggestion on the inquisition, not guilty, may be pleaded. It is like a criminal prosecution.

1 Wash. 31. It would present a strange anomaly to join a security, whose liability arose from contract merely, with a principal charged in an action *ex delicto !* Whether we look to precedent and authorities, or the reason of the thing, the conclusion is forced upon us that a *devastavit* can not be established in a suit against the administrator and his securities upon the official bond. How a *devastavit* shall be fixed, and how far the securities under our statute shall be liable for such malfeasance, must be left open for consideration. The question on the record is, whether a *devastavit* can be first established upon the suit against the administrator and his securities; and we are clearly of *opinion it can [103 not, and that such practice would be warranted by no authority. The conclusions of the court will be found supported by the following authorities: 1 Salk. 315 ; Camp. 140; 3 Atk. 248; 1 Munf. 1; 1 Wash. 31; 9 Mass. 114; 1 Marsh. 488; 2 Bibb, 292.; 13 Johns. 443; 1 Bay, 328; 1 McCord, 76. In these various authorities, with the exception of 13 Johns. 443, we find no suggestion of *devastavit* in the declaration upon an administrator's bond, nor is a question made of the liability of the administrator and his securities upon a breach of the condition. Upon the first error assigned, the judgment of the court below must be reversed. No argument was furnished on either side.