ECKER *v.* SWITZER, ADMR., ETC.

*Judgments—Lien upon real estate—Prior conveyance in fraud of creditors.*

A conveyance of real estate in fraud of creditors is absolutely void. When a judgment is rendered against a debtor who has made such conveyance the judgment becomes a lien on the real estate notwithstanding the conveyance.

(Decided October 25, 1922.)

ERROR: Court of Appeals for Gallia county.

Mr. *A. J. Greene,* for plaintiff in error.
Mr. *R. M. Switzer,* for defendant in error.

MAUCK, J. John W. Rankin died in the month of November, 1921, and on the 17th day of that month R. M. Switzer was appointed administrator of his estate. On November 29, the administrator filed his petition in the common pleas, alleging that his decedent on the 18th day of February, 1921, was the owner of the lands described in the petition, and that on that day, without consideration, and being then and there insolvent, transferred such property to his wife. The administrator prayed that the conveyance be declared null and void and that he be authorized to sell the lands for the payment of debts. Thereafter, on his own motion, John Ecker was made party defendant and filed a cross-petition alleging that at the September term, 1921, of the court of common pleas, he recovered a judgment against Rankin in the sum of $406; that on the 22d day of December, 1921, he caused execution to be issued and a levy made

on the property described in the petition. He further alleged that the judgment was a valid and subsisting lien, and asked the court to so find and to grant him such general relief as he might be entitled to. The administrator demurred to this cross-petition, the demurrer was sustained, and to the judgment rendered error is prosecuted to this court.

As the record discloses that Rankin died in November, 1921, and the execution was issued in December, 1921, it is clear that the execution and levy thereof were wholly ineffective.

The question for determination, therefore, is whether Ecker's judgment, recovered at the September term of the court of common pleas, became a lien upon the property of the judgment debtor, transferred without consideration by such judgment debtor in the preceding February, when judgment debtor was insolvent. There are two lines of authority upon this question. (15 Ruling Case Law, 901.) One line proceeds upon the theory that a conveyance of land made in fraud of the creditors of the grantor is valid as between the parties, and voidable only as to the creditors, and that the lien of a judgment against the debtor, recovered subsequent to the conveyance, does not attach to the land so conveyed. The other line of authorities holds that the real estate of a debtor, which has been conveyed by him in fraud of creditors, still remains as to them his property, because as to them the conveyance is utterly void. These two lines of authority are developed and discussed in a note to *Flint* v. *Chaloupka,* 117 Am. St. Rep., 786. It remains for us to determine, therefore, which of these lines of authority is the

law of Ohio. In *Westerman* v. *Westerman,* 25 Ohio St., 500, 510, Judge Welch says:

"As to creditors, a fraudulent sale of land is absolutely void. The creditor may levy his judgment upon the land, and cause it to be sold for the satisfaction of his judgment, and the fraudulent sale will be held a nullity, irrespective of the other property of the debtor."

See also the cases of *McVeigh* v. *Ritenour,* 40 Ohio St., 107, and *Clark* v. *Hubbard,* 8 Ohio, 382.

Counsel for defendant in error admits that on the strength of above authority Ecker could have caused the property in question to have been sold on execution, without the intervention of any equitable proceedings to set aside the conveyance, if such execution had been issued in the lifetime of the judgment debtor, but he insists that the Ohio authorities have not gone further. If an execution could have been issued and levy made upon the lands in question in October, 1921, it would have been because the judgment was already a lien upon the lands upon which the levy would be made. Section 11655, General Code, provides that:

"Lands and tenements, including vested interests therein   *   *   *   shall be subject to the payment of debts, and liable to be taken on execution and sold as hereinafter provided."

This section, the authorities hold, relates to legal and not equitable estates.

The subsequent section, 11656, provides:

"*Such* lands and tenements within the county where the judgment is entered shall be bound for its satisfaction from the first day of the term at which it is rendered.   *   *   *   All other lands, as well as goods and chattels of the debtor shall be

bound from the time they are seized in execution."

The strict letter of the law, therefore, is that such lands and tenements as are subject to execution sale are also, if within the county, subject to a judgment lien from the first day of the term at which such judgment is rendered. This is in harmony with the decisions of courts in those other states in which an attempted conveyance in fraud of creditors is declared by the statute to be a nullity.

In *First Natl. Bank of Los Angeles* v. *Maxwell,* 123 Cal., 360, 69 Am. St. Rep., 64, 72, it is said:

"If it be true, as the authorities clearly hold, that so far as it is necessary for the protection of creditors the title and ownership remains in the fraudulent grantor, and that a sale under execution will pass the legal title to the purchaser, it must logically follow that a judgment duly docketed becomes a lien on the real estate so fraudulently conveyed. If there is nothing to which a judgment lien could attach, there can be nothing which would pass by sale on execution."

The supreme court of Missouri quotes with approval from Bump on Fraudulent Conveyances as follows:

"If the creditors obtain judgment against the debtor after the transfer, they acquire liens upon his property wherever the same are given by law, according to the dates of their respective judgments, in the same manner precisely as if no transfer had been made; for the transfer is a nullity as against them, and the legal, as well as the equitable, title remains in the debtor for the purpose of satisfying the debts."

And that court holds:

"Liens of judgments attach in the order of their rendition to lands which have been transferred, or the title to which has been taken in the name of another, for the purpose of defrauding creditors, and have precedence of attachments subsequently levied."

See also in this connection *Slattery* v. *Jones, 96 Mo.*, 216, 9 Am. St. Rep., 344.

In *Jackson* v. *Holbrook*, 36 Minn., 494, 1 Am. St., 683, 687, the court, in commenting upon the fact that in other states the interest of a judgment debtor in the land after a fraudulent conveyance is deemed to be a mere equitable estate, says:

"This is not, however, the general rule, nor the rule in this state, where the lien of the judgment creditor is recognized and treated as valid, and one which may be enforced at law notwithstanding the prior fraudulent conveyance."

In *Hillyer* v. *LeRoy*, 179 N. Y., 369, 103 Am. St., 919, it is said:

"The property of a debtor, which has been transferred by him in fraud of creditors, still remains, as to them, the debtor's property and the lien of the creditor's judgment attaches to the real estate."

To the same effect are *Henderson* v. *Henderson*, 133 Pa. St., 399, 19 Am. St., 650, and *Cole* v. *Brown*, 114 Mich., 396, 68 Am. St., 491.

And our own supreme court, in discussing a similar lien on lands similarly conveyed, said in *Rennick* v. *Bank of Chillicothe*, 8 Ohio, 529, at page 533:

"This conveyance being fraudulent, the judgments of the bank would operate as a lien upon

the land in the hands of the complainants, or of any other person having notice of the fraud.''

The cross-petition in this case does not contain the averment that the indebtedness upon which the judgment against Rankin was predicated occurred prior to the transfer made by Rankin. It is, of course, necessary that this be proven. But as the cross-petition pleads that it is a valid and subsisting lien, and as no motion was made to require the cross-petition to be made more definite in this particular, we construe the cross-petition to be good as against demurrer in the particular named.

It follows, therefore, that the cross-petition stated a cause of action, and this requires a reversal of the judgment below.

Whether the indebtedness owed to Mr. Ecker was in fact an indebtedness that arose prior to the conveyance by Rankin, and whether the suffering of this judgment to be taken against him by Ecker was an unlawful preference thus given to Ecker, are questions that can only be determined when issue is joined upon those questions by answer in the trial court.

The judgment is reversed and the cause remanded for further proceedings according to law.

*Judgment reversed and cause remanded.*

SAYRE, P. J., and MIDDLETON, J., concur.