In re Oliver et al., Bankrupts.

(Nos. 67-2044-D, 67-2045-D—Decided September 27, 1968.)

United States District Court for the Southern District of Ohio, Western Division.

*Mr. Russell L. Carter*, for bankrupt.
*Mr. Clifton E. Plattenburg, Jr.*, trustee in bankruptcy.
*Mr. Jack Mayl*, for General Motors Acceptance Corp.

### Preliminary Statement

Anderson, Referee in Bankruptcy. This matter is before this court upon a petition of the trustee in bankruptcy to invalidate a judgment lien claimed by General Motors Acceptance Corporation on real estate sold by the trustee; a hearing held August 28, 1968; the evidence; and arguments by the trustee in bankruptcy, Mr. Clifton E. Plattenburg, Jr., acting as his own attorney, and Mr. Jack

J. Mayl, attorney for General Motors Acceptance Corporation. The issues raised are identical in both cases.

## FINDINGS OF FACTS

Voluntary petitions in bankruptcy were filed herein on October 16, 1967, by Rogers Oliver and Lucy Oliver, husband and wife.

Previously, on August 11, 1966, the bankrupts had conveyed their residence real estate to their three dependent minor children, without consideration. Subsequently, guardians of the estates of these minors were appointed by the Probate Court.

General Motors Acceptance Corporation obtained a judgment against the bankrupts in the amount of $2795.93, plus interest, and filed a certificate of judgment lien, on June 13, 1967. This creditor was duly listed in the bankrupts' schedules.

Upon proceedings instituted by the trustee in bankruptcy on November 17, 1967, and after extensive hearings, this court by decision and order, entered February 19, 1968, set aside the conveyance to the minor dependents pursuant to the Uniform Fraudulent Conveyance Act as adopted in Ohio and Section 70e of the Bankruptcy Act. (The determination of facts contained in this court's decision of February 19, 1968, will not be reiterated herein.)

The General Motors Acceptance Corporation had taken no action in the state courts to set aside the conveyance, and were not an intervening party in the action by the trustee instituted in the bankruptcy court. The question of a lien was first raised after the sale by the trustee, at the time of declaring a dividend to creditors.

## DECISION

The question at issue of the effect of the certificate of judgment involves an interpretation of Ohio law pertaining to perfection of judgment liens against real estate and, also, the effect of setting aside a conveyance "fraudulent" by operation of law.

The certificate of judgment was filed after the convey-

ance of record title by the judgment debtors, and before the date of this court's prior decision and order setting aside the transfer. General Motors Acceptance Corporation has urged that the decision setting aside the conveyance effected the result of declaring the title continuously vested in the grantors, now bankrupts, as to any lien rights intervening.

There is semantical authority for this position stemming from an action by a husband to set aside an antenuptial conveyance by his wife to her sons, in *Westerman* v. *Westerman* (1874), 25 Ohio St. 500, and the broad generalization of the Ohio Supreme Court that "As to creditors a fraudulent sale of land is absolutely void. The creditor may levy his judgment upon the land and cause it to be sold for the satisfaction of his judgment, and the fraudulent sale will be held a nullity, irrespective of the other property of the debtor. * * *"

This same semantical approach was later taken by an intermediate Ohio appellate court in the case of *Ecker* v. *Switzer*, 17 Ohio App. 90, in an action by the transferor-decedent's administrator to set aside a conveyance after death, in which a judgment creditor intervened.

This court has analyzed the semantics of the words "fraudulent" as employed in the Uniform Fraudulent Conveyance Act as adopted in Ohio on several previous occasions, which will not be repeated herein. For decisions, see *In re Frontier Ranch, Inc.* (1967), Case No. 37776 (At Columbus); *In re Mary Louise Lester* (1965), Case No. 18378 (At Dayton); and *In re Robert Lee Williams* (1965), Case No. 22395 (At Dayton). The "fraud" involved is not the actual fraud required by the original English enactment, Statute of 13 Elizabeth C.5 (1571).

It is well settled in Ohio as a rule of law (normative in purpose) that a judgment is not a lien upon "after-acquired" real estate. See cases and comments in *McDermott Ohio Real Property Law and Practice* (1966), Volume 3, Section 19-21-B, referring to *Stiles* v. *Murphy* (1829), 4 Ohio 92; *Roads* v. *Symmes* (1824), 1 Ohio 281; *Gorrell* v. *Kelsey* (1883), 40 Ohio St. 117, 10 W. L. B. 20. A certifi-

cate of judgment does not effect a lien upon after-acquired real estate, nor upon an equitable interest in land under a land contract. *Bank of Ohio* v. *Lawrence* (1954), 161 Ohio St. 543.

Neither a semantical nor a normative approach should be conclusive in resolving the instant controversy, particularly in light of the bankruptcy court juristic manifold, occasioned by an intervening adjudication in bankruptcy of the grantors while record title was vested in the grantees. Abstract rules and finespun technicalities such as employed in the *Ecker* v. *Switzer case, supra,* are not realistic in this context. The specific facts must bear analysis. Furthermore, the decisions by the Ohio courts cited by the respondent were rendered before adoption of the Uniform Fraudulent Conveyances Act, when a statute used the words "utterly void and of no effect." See Section 8618, General Code. This provision was incorporated under the Ohio Statute of Frauds, but required a suit to enforce. Furthermore, these statutes were enacted long before the certificate of judgment statutes and the general liens created thereby. In both the *Westerman* and *Gormley cases, supra,* a levy of execution had been effected, and the established procedure was a creditors bill in equity.

Unfortunately, there is no clearly announced rule of decision of the highest court of the state and no statutory law clearly defining judgment lien perfection under the facts and issues now before the court.

Nevertheless, detailed study of the decisions mentioned and the applicable statutes reveal some significant factors. Even before the Uniform Fraudulent Conveyance Act, it had long been recognized that a judgment creditor can and must maintain an action to set aside the conveyance in order to assert a claim. See *Gormley* v. *Potter* (1871), 29 Ohio St. 597. Under the Uniform Fraudulent Conveyance Act as adopted in Ohio (Sections 1336.01 to 1336.12, Revised Code), remedies are provided against any transferees other than purchasers for fair consideration without knowledge of the fraud at the time of purchase, or those deriving title from such purchasers.

Under Section 1336.09, Revised Code, whenever a conveyance or obligation is fraudulent as to a creditor, such creditor may ''(1) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim; or (2) disregard the conveyance and *attach or levy execution under the property conveyed.*'' [Emphasis added.] It is significant to note that the latter traditional remedy was added to the statutes by (29 Ohio Laws 1008), effective October 23, 1961. See, also, Sections 1313.56 and 1313.58, Revised Code, as to suits for recovery of transferred property in ''fraud'' of creditors. The gist of all these statutes is born out by Section 2329.03, Revised Code, as to levy of execution, and the levy of execution upon a certificate of judgment provided in Section 2329.04, Revised Code.

The normative rule, that judgment liens perfected by filing a certificate of judgment do not affect title not vested, serves a valid and salutary purpose. Any search of the public records while the judgment debtor is record owner will put the examiner on notice of a general lien. If such a general lien were to affect after-acquired real estate, a title examiner would have the impossible burden of searching the voluminous public records as to each record title holder in the chain of title for the periods of the potential life span of each owner. A bona fide purchaser for value would not be obvious from the record title. Such a rule would be a chaotic if not impossible burden on conveyancing not serving any purpose, because a specific judgment lien is permitted and perfected in Ohio by a levy of execution or attachment.

Conversely, any creditor who feels aggrieved by a conveyance questionable under the fraudulent transfer statutes is afforded plain and adequate remedies. Such a creditor may either institute direct action ''to have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim''; or ''disregard the conveyance and attach or levy execution upon the property conveyed.''

These remedies are consistent with the normative rule that a certificate of judgment general lien does not affect

titles not vested in the judgment debtor. They are also consistent with the meager Ohio judicial precedents mentioned, even though all rendered prior to the adoption of the fraudulent transfer statutes, since a direct action or levy of execution had been made by the judgment creditors in those cases before intervening rights or principles could intervene.

Under bankruptcy jurisprudence, the trustee in bankruptcy administers the assets for equal benefit of all creditors. If there can exist any further doubts about such fundamentals since the decision of the United States Supreme Court in *Moore* v. *Bay* (1931), 284 U. S. 4, 78 L. Ed. 133, 52 S. Ct. 3, the language of the present statute, clearly provides that ''all property of the debtor affected by any such [voidable] transfer, shall be and remain a part of his assets * * * for the benefit of the estate.'' Bankruptcy Act Section 70 e (1) and 70 e (2), 11 U. S. Code, Section 110.

Until a creditor brings an action to set aside a questionable transfer, record title is definitely vested in the grantee or transferee subject only to divestment, other semantics notwithstanding. Under the Ohio law, and consistent with bankruptcy jurisprudence, a creditor may, under appropriate circumstances ''have the conveyance set aside or obligation annulled *to the extent necessary to satisfy his claim.*'' It would be a dangerous procedure to revest title indiscriminately. The conveyance is not really set aside *en toto.* For instance, title is not revested in the grantor in derogation of the rights of the grantee, and any surplus resulting from a sale of the property belongs to the grantee. See annotated cases in 37 Corpus Juris Secundum, Fraudulent Conveyances, Section 266.

Again, the emphasis on the facts herein should be upon a realization that these statutory concepts maintain a relevance and dimension in the market place to which they must be kept sensitive. Before the trustee in bankruptcy took action for all of the creditors, General Motors Acceptance Corporation had done nothing to litigate the questions. At the point of adjudication in bankruptcy, and

later when action was instituted by the trustee, record title was not vested in the bankrupt grantors.

It is unnecessary to examine the statutory lien rights conferred upon a trustee in bankruptcy, or the date of implementation of such rights, since the judgment lien asserted did not constitute a specific lien, as on levy of execution, required by Section 1336.09, Revised Code.

A further element, suggested by Section 67 C. (1) (B) of the Bankruptcy Act (11 U. S. C. Sec. 107), will not be analyzed under the broader decision herein. Even though the trustee is not given the actual status of a bona fide purchaser, the effect is the same under this section. See Seligson, ''Treatment of Statutory Liens in Bankruptcy— The 1966 Amendments of Section 67 b and c'' 27 Fed. B. J. 111 (1967). As mentioned previously, the Uniform Fraudulent Conveyance Act specifically protects bona fide purchasers.

It is likewise unnecessary to examine the question of laches on the part of the judgment creditor for failure in pursuing judgment rights until after the conveyance was set aside in the action prosecuted by the trustee in bankruptcy for the benefit of all creditors.

ORDERED, ADJUDGED AND DECREED, that General Motors Acceptance Corporation did not perfect a valid judgment lien as to other creditors and the trustee in bankruptcy by filing a certificate of judgment after record title was conveyed by the judgment debtors since no action was taken to set aside the conveyance or seek a levy of execution upon the specific property before the conveyance was set aside by action of the trustee in bankruptcy.

ORDERED, that the trustee in bankruptcy pay all administrative costs and make pro rata distribution to all creditors whose claims have been duly proved and allowed in the order of statutory priorities.