[Cite as *Spring Hill Town Homes v. Pounds*, 2012-Ohio-2800.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

SPRING HILL TOWN HOMES          :

    Plaintiff-Appellee          :    C.A. CASE NO. 24894

vs.          :    T.C. CASE NO. 10CVG587

MELISSA POUNDS, et al.          :    (Civil Appeal from
        Municipal Court)

    Defendant-Appellant          :

. . . . . . . . .

# O P I N I O N

Rendered on the 22nd day of June, 2012.

. . . . . . . . .

Joseph R. Matejkovic, Atty. Reg. No. 0056097, 8050 Beckett Center Drive, Suite 214, West Chester, Ohio 45069-5018
    Attorney for Plaintiff-Appellee

Scott A. Ashelman, Atty. Reg. No. 0074325, 703 Liberty Tower, 120 W. Second Street, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . .

**GRADY, P.J.:**

{¶ 1}   Defendant Melissa Pounds appeals from a final judgment in favor of Plaintiff Spring Hill Town Homes ("Spring Hill") in the amount of $422.80, plus interest and costs.

{¶ 2}   Spring Hill owns and operates a residential apartment property.   In February of 2007, Melissa and James Pounds executed a Rental Agreement to rent an apartment from Spring Hill.   They paid Spring Hill a security deposit of $599.00, the amount of their monthly rent.

{¶ 3}   In September of 2009,  Melissa noticed an infestation of bed bugs in their apartment.   She notified Spring Hill, which obtained the services of an exterminator.   After four treatments, the bed bug problem was resolved.

{¶ 4}   The exterminator billed Spring Hill $780.00 for its extermination services. Spring Hill notified the Defendants that they were responsible to reimburse Spring Hill for that amount.   On November 6, 2009, the parties entered into a "Repayment Agreement," in which James and Melissa agreed to pay Spring Hill $111.42 each month until the $780.00 balance was paid in full.   The Repayment Agreement further provided: "I/we understand that this agreement will be in default when one (1) payment is delinquent and that in the event of default, no future agreement will be made and all monies will be due in full and an eviction action will be initiated."   (Dkt. 10., Exhibit A.)

{¶ 5}   Melissa and James made two payments pursuant to the Repayment Agreement, but then stopped making payments.   In a letter dated February 29, 2010, Spring Hill notified Melissa and James that eviction proceedings would be initiated unless further payments were received by February 26, 2010.   Melissa and James made no further payments.

{¶ 6}   On March 26, 2010, Spring Hill commenced the underlying action for forcible entry and detainer and for money damages.   The Defendants filed an answer and a counterclaim, alleging that Spring Hill failed to remit all or part of the $599.00 security deposit the Defendants paid, and that Spring Hill failed to present them a timely and itemized statement of the charges against their security deposit that Spring Hill had made, as required by R.C. 5321.16(B).

{¶ 7}   Defendants vacated their apartment on April 19, 2010, while the action was pending.   They provided Spring Hill a forwarding address.   On May 26, 2010, Spring Hill sent Defendants an invoice showing a total of all charges due and owing Spring Hill.   The notice stated that, after application of their $599.00 security deposit, a total of $868.79 remained due and owing  Spring Hill for those charges, which included a net balance of $642.75 due and owing under the Repayment Agreement for the exterminator's services.

{¶ 8}   The matter was referred to a magistrate.   Following an evidentiary hearing, the magistrate filed a decision finding that Defendants owe Spring Hill $630.00 under the Repayment Agreement., and that, in addition, Defendants owe $324.80 for pro rata unpaid rent and $25.00 and $42.00, respectively, for removing a carpet spot and for replacement of a bedroom door.   The total of these charges is $1,021.80.

{¶ 9}   The magistrate further found that Defendants paid Spring Hill a security deposit of $599.00, and that after applying that amount against the amount of $1,021.80 that Defendants owe Spring Hill, Defendants are indebted to Spring Hill for the difference in the net amount of $422.80.   The decision awarded Spring Hill a judgment in that amount, plus interest and costs.

{¶ 10} Defendants filed timely objections to the magistrate's decision. The trial court overruled the objections and adopted the decision as the court's judgment. Defendants filed a notice of appeal.

{¶ 11} First Assignment of Error:

{¶ 12} "THE TRIAL COURT ERRED IN ITS DETERMINATION THAT A TENANT IS LIABLE TO PAY THE COSTS OF PEST EXTERMINATION IN LIGHT OF A LANDLORD'S STATUTORY DUTY TO PROVIDE A 'FIT AND HABITABLE' PREMISES UNDER R.C. §5321.04(A)(2)."

{¶ 13} Melissa filed two objections to the magistrate's decision. Neither objection addressed the error now raised in Melissa's first assignment of error. Pursuant to Civ.R. 53(D)(3)(b)(iv), "a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)."

{¶ 14} The first assignment of error is overruled.

{¶ 15} Second Assignment of Error:

{¶ 16} "THE TRIAL COURT ERRED IN FINDING THAT A CONTRACT EXECUTED UNDER THE THREAT OF EVICTION IS AN ARMS LENGTH TRANSACTION."

{¶ 17} Melissa complains that the Repayment Agreement obligating Defendants to reimburse Spring Hill for the cost of the exterminator's services was not an "arms-length" transaction, being instead one that arose out of the parties' private relationship as landlord and tenant. Melissa further complains that the agreement was a product of economic duress

because "she felt that she had no choice but to agree to (Spring Hill's) demands." (Brief, p. 7).

{¶ 18} Melissa's arms-length argument relies on *Wellington Square, LLC v. Auditor of Clark County*, 2d Dist. Clark No. 2009CA87, 2010-Ohio-2928, and *Walters v. Knox County Board of Tax Revision*, 47 Ohio St.3d 23, 546 N.E.2d 932 (1989). Those cases involved tax revision determinations, which require a finding of a property's true value and allow consideration for that purpose of the sale price of the property in an arms-length transaction. An arms-length transaction is one which is voluntary, that is, without compulsion or duress, and that takes place in an open market in which the parties to the sale act in their own self-interest. *Knox.*

{¶ 19} The Repayment Agreement was a private transaction and had nothing to do with a tax assessment. The arms-length requirement in the cases on which Defendants rely have no application.

{¶ 20} The 10th District Court of Appeals has explained that financial difficulty alone is insufficient to establish duress and avoid a contract:

> [E]conomic duress may be shown where the person claiming duress was subjected to improper threats which deprived that person of any reasonable alternative but to assent to the terms of the person making the threat. * * * Generally, a threat to do what one is legally entitled to do is not an improper threat. * * * Taking advantage of another's financial difficulty does not constitute duress either. * * * Rather, the person claiming duress must show that the person making the threats caused or contributed to the alleged financial

straits.

*Maust v. Bank One Columbus, N.A.*, 83 Ohio App.3d 103, 108, 109, 614 N.E.2d 765 (10th Dist.1992), citing *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 246, 551 N.E.2d 1249 (1990).

{¶ 21} There is no evidence in the record before us that Melissa was under any economic duress that was caused by Spring Hill when she signed the Repayment Agreement. Consequently, the trial court did not err in finding that the Repayment Agreement was an enforceable contract.

{¶ 22} The second assignment of error is overruled.

{¶ 23} Third Assignment of Error:

{¶ 24} "THE TRIAL COURT ERRED WHEN IT DETERMINED THAT THE REPAYMENT AGREEMENT FOR EXTERMINATION SERVICES WAS INCORPORATED INTO THE APPELLANT'S LEASE; THUS, ANY DAMAGES OWING FROM A BREACH OF SAID AGREEMENT WERE PROPERLY DEDUCTABLE FROM APPELLANT'S SECURITY DEPOSIT."

{¶ 25} R.C. 5321.16(B) allows a landlord to retain and not return a security deposit in certain circumstances and, provides, in part:

> Upon termination of the rental agreement any property or money held by the landlord as a security deposit may be applied to the payment of past due rent and to the payment of the amount of damages that the landlord has suffered by reason of the tenant's noncompliance with section 5321.05 of the Revised Code or the rental agreement. * * *

{¶ 26} In short, R.C. 5321.16(B) allows a landlord to apply a security deposit toward

past due rent or damages caused by a tenant's failure to live up to his or her duties set forth in R.C. 5321.05 or the rental agreement. R.C. 5321.05 provides, in part:

> (A) A tenant who is a party to a rental agreement shall do all of the following:

> (1) Keep that part of the premises that he occupies and uses safe and sanitary;

> (2) Dispose of all rubbish, garbage, and other waste in a clean, safe, and sanitary manner;

> * * *

> (C)(1) If the tenant violates any provision of this section, other than division (A)(9) of this section, the landlord may recover any actual damages that result from the violation together with reasonable attorney's fees. This remedy is in addition to any right of the landlord to terminate the rental agreement, to maintain an action for the possession of the premises, or to obtain injunctive relief to compel access under division (B) of this section.

{¶ 27} Spring Hill argues that it was entitled to apply the balance due under the Repayment Agreement against Defendants' security deposit pursuant to R.C. 5321.16(B) because the bed bug infestation resulted from Defendants' failure to keep their premises in a "safe and sanitary condition" as required by R.C. 5321.05(A)(1). The trial court made no finding that any such violation had occurred.

{¶ 28} The only finding by the trial court that Melissa or James failed to live up to their obligations under the lease agreement or R.C. 5321.05 was that they failed to pay rent for

the 19 days of April in which they lived at the Spring Hill apartment ($385.70), and that they should have paid $25.00 to remove a spot from a carpet and $42.00 for replacement of the bedroom door. Adding those three charges together, Spring Hill was entitled to deduct $452.70 from the $599.00 security deposit pursuant to R.C. 5321.16(B) and 5321.05.

{¶ 29} The trial court further found that Spring Hill could apply the remainder of the security deposit toward the amount Melissa and James owe pursuant to the Repayment Agreement. We do not agree. The Repayment Agreement is not a rental agreement contemplated by R.C. 5321.16(B), and it was not incorporated into their rental agreement by the parties. In that respect, paragraph 25 of the rental agreement provides:

Amendments. This Lease is the entire agreement between the parties, there being no oral conditions, representations, warranties or agreements. Any subsequent conditions, representations, warranties or agreements or alterations of the terms of this Lease shall not be valid unless in writing and signed by both parties.

{¶ 30} Although the Repayment Agreement was in writing and signed by the parties, it makes no reference to the rental agreement and is not a modification of the rental agreement or replacement of the rental agreement. Consequently, Defendants' failure to pay as obligated by the Repayment Agreement does not constitute a failure to comply with the rental agreement. Further, the failure to pay pursuant to the Repayment Agreement is not a failure to comply with a tenant's obligations pursuant to R.C. 5321.05.

{¶ 31} Spring Hill could not withhold the remainder of the security deposit and apply it to the outstanding balance owed on the Repayment Agreement. Rather, Spring Hill was

required to return the remainder of the security deposit within 30 days of the date on which Melissa and James moved out of Spring Hill's apartment, which Spring Hill failed to do. Not having otherwise been the subject of a claim for relief pled in this action, Spring Hill's right to the balance due under the Rental Agreement is necessarily enforceable only in a separate action.

{¶ 32} The trial court erred in finding that Spring Hill is entitled to apply against the security deposit the remaining amount the Pounds owe under the Repayment Agreement. Therefore, the third assignment of error is sustained. The judgment will be reversed and the matter will be remanded to the trial court to determine what amount, if any, Spring Hill owes to Melissa for its failure to timely return the remaining portion of Melissa's security deposit, after deduction of the other charges which the trial court found are due and owing and to order relief accordingly.

FROELICH, J., And HARSHA, J., concur.

(Hon. William H. Harsha, Fourth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)

Copies mailed to:

Joseph R. Matejkovic, Esq.
Scott A. Ashelman, Esq.
Hon. Robert w. Rettich