[Cite as *Spring Hill Townhomes v. Pounds*, 2014-Ohio-1980.]


# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
### MONTGOMERY   COUNTY

| | | |
|---|---|---|
| SPRING HILL TOWNHOMES | : | |
| | : | Appellate Case No. 25887 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 10-CVG-587 |
| v. | : | |
| | : | |
| MELISSA POUNDS, et al. | : | (Civil Appeal from Miamisburg |
| | : | Municipal Court) |
| Defendants-Appellees | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of May, 2014.

. . . . . . . . . . .

JOSEPH R. MATEJKOVIC, Atty. Reg. #0056097, 8050 Beckett Center Drive, Suite 214, West Chester, Ohio 45069-5018
      Attorney for Plaintiff-Appellant

SCOTT A. ASHELMAN, Atty. Reg. #0074325, 120 West Second Street, Suite 703, Dayton, Ohio 45402-1604
      Attorney for Defendants-Appellees

. . . . . . . . . . . . .

HALL, J.,

    **{¶ 1}**    Section 5321.16 of the Revised Code is the statute in Ohio's landlord-tenant law

that governs security deposits. Division (B) of the statute provides that when a rental agreement is terminated, a landlord may deduct from a tenant's security deposit "past due rent" and "the amount of damages that the landlord has suffered by reason of the tenant's noncompliance with section 5321.05 of the Revised Code or the rental agreement." R.C. 5321.16(B). Division (B) also provides that the landlord must then return the remainder of the deposit (if any) to the tenant and must do so "within thirty days after termination of the rental agreement and delivery of possession." *Id.* If the landlord fails to timely return the remainder, division (C) provides that the tenant may recover double damages and "reasonable attorneys fees." R.C. 5321.16(C).

{¶ 2}   Plaintiff Spring Hill Townhomes failed to timely return the remainder of Defendant Melissa Pounds's security deposit. So the trial court awarded her the amounts to which she was entitled, including $4,637.50 in reasonable attorneys fees. Spring Hill contends that Pounds is not entitled to anything because it substantially complied with R.C. 5321.16(B). Spring Hill further contends that Pounds failed to present sufficient evidence to support the trial court's attorney's fees award. We conclude that substantial compliance with the statute is insufficient and that the evidence supporting the attorney's fees award is sufficient. Spring Hill also contends that the trial court should have permitted it to amend its complaint by adding a $630 claim against Pounds based on the trial court's finding that she breached an extra-rental-agreement contract with Spring Hill. With this contention, we agree. Therefore we modify the trial court's judgment and affirm.

## I. FACTS

{¶ 3}   This is the second time that this case has been before us. The following facts are taken from our previous opinion:

Spring Hill owns and operates a residential apartment property. In February of 2007, Melissa and James Pounds executed a Rental Agreement to rent an apartment from Spring Hill. They paid Spring Hill a security deposit of $599.00, the amount of their monthly rent.

In September 2009, Melissa noticed an infestation of bed bugs in their apartment. She notified Spring Hill, which obtained the services of an exterminator. After four treatments, the bed bug problem was resolved.

The exterminator billed Spring Hill $780.00 for its extermination services. Spring Hill notified the Defendants that they were responsible to reimburse Spring Hill for that amount. On November 6, 2009, the parties entered into a "Repayment Agreement," in which James and Melissa agreed to pay Spring Hill $111.42 each month until the $780.00 balance was paid in full. The Repayment Agreement further provided: "I/we understand that this agreement will be in default when one (1) payment is delinquent and that in the event of default, no future agreement will be made and all monies will be due in full and an eviction action will be initiated."

* * *

Melissa and James made two payments pursuant to the Repayment Agreement, but then stopped making payments. In a letter dated February 29, 2010, Spring Hill notified Melissa and James that eviction proceedings would be initiated unless further payments were received by February 26, 2010. Melissa and James made no further payments.

On March 26, 2010, Spring Hill commenced the underlying action for forcible entry and detainer and for money damages. The Defendants filed an

answer and a counterclaim, alleging that Spring Hill failed to remit all or part of the $599.00 security deposit the Defendants paid, and that Spring Hill failed to present them a timely and itemized statement of the charges against their security deposit that Spring Hill had made, as required by R.C. 5321.16(B).

Defendants vacated their apartment on April 19, 2010, while the action was pending. They provided Spring Hill a forwarding address. On May 26, 2010, Spring Hill sent Defendants an invoice showing a total of all charges due and owing Spring Hill. The notice stated that, after application of their $599.00 security deposit, a total of $868.79 remained due and owing Spring Hill for those charges, which included a net balance of $642.75 due and owing under the Repayment Agreement for the exterminator's services.

The matter was referred to a magistrate. Following an evidentiary hearing, the magistrate filed a decision finding that Defendants owe Spring Hill $630.00 under the Repayment Agreement, and that, in addition, Defendants owe $324.80 for pro rata unpaid rent and $25.00 and $42.00, respectively, for removing a carpet spot and for replacement of a bedroom door. The total of these charges is $1,021.80.

The magistrate further found that Defendants paid Spring Hill a security deposit of $599.00, and that after applying that amount against the amount of $1,021.80 that Defendants owe Spring Hill, Defendants are indebted to Spring Hill for the difference in the net amount of $422.80. The decision awarded Spring Hill a judgment in that amount, plus interest and costs.

Defendants filed timely objections to the magistrate's decision. The trial

court overruled the objections and adopted the decision as the court's judgment.

Defendants filed a notice of appeal.

*Spring Hill Town Homes v. Pounds*, 2012-Ohio-2800, 972 N.E.2d 1121, ¶ 2-10 (2d Dist.).

**{¶ 4}** We agreed with the Pounds' contention that the trial court had erred by determining that the Repayment Agreement is incorporated into their lease. And we concluded that their failure to pay under the Repayment Agreement is not a violation of the Rental Agreement or a violation of their statutory tenant obligations, *compare* R.C. 5321.05 (listing those obligations). Consequently, "Spring Hill could not withhold the remainder of the security deposit and apply it to the outstanding balance owed on the Repayment Agreement." *Spring Hill* at ¶ 31. "Rather," we said, "Spring Hill was required to return the remainder of the security deposit within 30 days of the date on which Melissa and James moved out of Spring Hill's apartment, which Spring Hill failed to do." *Id*. We also noted that "[n]ot having otherwise been the subject of a claim for relief pled in this action, Spring Hill's right to the balance due under the Rental [read Repayment][1] Agreement is necessarily enforceable only in a separate action." *Id.* We reversed and remanded for the trial court "to determine what amount, if any, Spring Hill owes to Melissa for its failure to timely return the remaining portion of Melissa's security deposit, after deduction of the other charges which the trial court found are due and owing and to order relief accordingly." *Id*. at ¶ 32.

---

[1] This is an error in our opinion. The first sentence of the paragraph says that "Spring Hill could not withhold the remainder of the security deposit and apply it to the *outstanding balance owed on the Repayment Agreement*." (Emphasis added.) *Spring Hill* at ¶ 31.

{¶ 5}   On remand, Melissa Pounds[2] filed a motion for a damages-and-attorney's-fees hearing. For its part, Spring Hill filed a motion to amend its complaint by adding a claim for breach of the Repayment Agreement which the magistrate found was due to Spring Hill. On January 29, 2013, the trial court entered judgment on unpaid rent and damages, "to reflect the finding of the Second District Court of Appeals." Entry, Order, and Notice of Phone Conference (Jan. 29, 2013). This judgment awards Spring Hill–in addition to amounts for carpet-spot removal, bedroom-door replacement, and unpaid rent in April 2010–the $630 that Pounds owes under the Repayment Agreement. The judgment also overrules Spring Hill's motion to amend its complaint. Pounds immediately filed a motion for reconsideration and asked the court to vacate this judgment. She argued that, under our *Spring Hill* decision, Spring Hill was not permitted to withhold the $630, and she pointed out that the trial court had not yet determined how much she was entitled to for Spring Hill's wrongful withholding.

{¶ 6}   Later, Pounds filed a motion requesting attorney's fees of $15,522.50. To the motion, she attached a billing statement prepared by her attorney. The statement briefly describes each task that the attorney completed in the case and states the date on which it was completed and the time that it took to complete. In all, the statement shows that, between February 23, 2010, and February 26, 2013, Pounds's attorney spent 88.7 hours on the case and charged an hourly rate of $175. Spring Hill opposed the motion and an evidentiary hearing was held. Pounds presented the testimony of an expert who said that the tasks, times, and rate on the billing statement are all reasonable in this case. Pounds did not seek to admit the billing statement into evidence. When

---

[2] Spring Hill brought this action against both Melissa and James Pounds. It appears from the record that in November 2011 James's debts were discharged in bankruptcy. Although it does not appear that he was formally dismissed from this action, it is clear that the action focuses on Melissa.

Spring Hill's turn came, it moved to dismiss the attorney's fees motion. Spring Hill argued that Pounds had failed to present sufficient evidence of the requested amount–no testimony from Pounds that she was actually billed the amount requested and no testimony from her attorney that the items listed on the billing statement were reasonable and necessary and reflect what he actually did. Spring Hill further argued that the billing statement contained mostly inadmissible hearsay and that Pounds failed to establish the business-records hearsay exception. After the court said that it would not dismiss the motion, Spring Hill presented the testimony of its own expert. The expert testified that "a fee of $3,500.00 to $5,000.00 would not be out of line at all for doing that work [the work in this case]." (Tr. 75-76). After the hearing, Pounds's attorney filed an affidavit averring that the billing statement is "a true and accurate record of Counsel's time spent and actions taken" and "a true and accurate record of Counsel's hourly billing rate for the matter." Affidavit, ¶ 3, 4.

{¶ 7} On August 1, 2013, the trial court sustained Pounds's motion for reconsideration, vacated the January 29 judgment, and entered final judgment for Pounds in the amount of $5,176.90. The court found that Spring Hill was entitled to withhold $391.80 from the $599 security deposit ($25 for carpet-spot removal, $42 for bedroom-door replacement, and $324.80 for unpaid rent in April 2010) and that, therefore, Spring Hill wrongly withheld $207.20. The court awarded Pounds court costs of $125 and double damages of $414.40. Concerning attorney's fees, the court accepted the $175 hourly rate but found, "[a]fter consideration of all relevant factors, including a thorough and careful review of Defendant's Exhibit A [as the billing statement is labeled]," that 26.5 hours was a reasonable number of hours to spend on the case. Decision and Entry of Judgment, 6 (Aug. 1, 2013). So the court awarded Pounds reasonable attorney's fees of $4,637.50.

**{¶ 8}** Spring Hill appealed.

## II. ANALYSIS

**{¶ 9}** Spring Hill presents three assignments of error for review. The first alleges that the trial court erred by holding that it wrongly withheld part of the security deposit. The second alleges that the court erred by ordering Spring Hill to pay Pounds's attorney's fees. And the third alleges that the court erred by vacating the January 29, 2013 judgment and also erred by not permitting Spring Hill to amend its complaint.

### A. Wrongful Withholding

**{¶ 10}** The amount of a security deposit that is wrongly withheld is "the amount found owing from the landlord to the tenant over and above any deduction that the landlord may lawfully make." *Vardeman v. Llewellyn*, 17 Ohio St.3d 24, 29, 476 N.E.2d 1038 (1985). Spring Hill argues, in the first assignment of error, that the trial court erred by holding that it wrongly withheld part of Pounds's security deposit. It contends that when a tenant and landlord are litigating the amounts that the landlord has deducted, and the court decides that a particular amount was deducted unlawfully, the landlord substantially complies with R.C. 5321.16(B) if it returns this amount within 30 days of the court's decision. Spring Hill's contention assumes that substantial compliance is sufficient to avoid the penalties in R.C. 5321.16(C). On this circumstance, it is not.

**{¶ 11}** If a landlord wrongly withholds part of a tenant's security deposit, "the award of damages provided in R.C. 5321.16(C) is mandatory." *Klemas v. Flynn*, 66 Ohio St.3d 249, 251, 611 N.E.2d 810 (1993), citing *Smith v. Padgett*, 32 Ohio St.3d 344, 513 N.E.2d 737 (1987),

paragraph three of the syllabus. Spring Hill's substantial-compliance argument suggests that to a R.C. 5321.16 claim bad faith is an element and good faith a defense. This is not so. "There is no requirement that the landlord act in bad faith. * * * [And] a showing of good faith is no defense." *Buck v. Georgian Manor Investments*, 8th Dist. Cuyahoga No. 67170, 1995 WL 143813, *4 (Mar. 30, 1995). The Ohio Supreme Court has said the same. *See, e.g., Padgett* at 349 ("R.C. 5321.16(B) and (C) do not require bad faith on the part of the landlord."); *Klemas* at 251 ("There is no requirement that a conscious, deliberate, or intentional attempt to cause harm be proved in order to recover statutory double damages pursuant to R.C. 5321.16(C)."). As the Tenth District has pointed out, "[o]ne of the purposes of R.C. 5321.16(C) is to remove any obligation of the tenant to prove bad faith or improper motive on the part of the landlord. Thus, the landlord's motive in failing to make a timely refund of a security deposit as required by R.C. 5321.16(B) does not affect his liability for the statutory penalty provided by R.C. 5321.16(C) if the security deposit is not timely refunded." *Forquer v. Colony Club*, 26 Ohio App.3d 178, 180, 499 N.E.2d 7 (10th Dist.1985). The landlord's argument might have more merit if the dispute was over an amount withheld for an item that was specifically authorized by statute. Here, the amount withheld was unauthorized.

{¶ 12} The trial court correctly held that Spring Hill wrongly withheld part of Pounds's security deposit.

{¶ 13} The first assignment of error is overruled.

### B. "Reasonable Attorneys Fees"

{¶ 14} The second assignment of error alleges that the trial court erred when it "ordered plaintiff/appellant to pay defendant/appellee's attorney's fees." Brief of Plaintiff/Appellant Spring Hill Townhomes, 16. This is not what the court ordered. The trial court awarded Pounds

the attorney's fees to which R.C. 5321.16(C) entitled her. And the fees provided in this section are not *actual* attorney's fees but *reasonable* attorney's fees.

{¶ 15}  Spring Hill contends that the trial court could not award any attorney's fees because Pounds failed to present her own testimony about the fees and failed to present her attorney's testimony about them. This testimony was not required here. No party has a burden to prove anything concerning R.C. 5321.16(C) attorney's fees. Division (C) entitles the tenant to "reasonable attorneys fees." The only question is the amount that is reasonable in the particular case–the question on which the parties may present evidence. Pounds was not required, therefore, to present any evidence about the attorney's fees that she actually paid or the work that her attorney did.

{¶ 16}  Spring Hill further contends that the trial court could not admit the billing statement because Pounds failed to satisfy the business-records hearsay exception. A court must answer the reasonable-amount question based on all of the evidence. *Padgett*, 32 Ohio St.3d at 349, 513 N.E.2d 737. So the court "must take sufficient evidence on the issue, by testimony, deposition, affidavit or otherwise * * *." *Oakwood Mgt. Co. v. Young*, 10th Dist. Franklin No. 92AP-207, 1992 WL 324338, *4 (Oct. 27, 1992). An evidentiary hearing is needed only when the evidence conflicts. *Id*. Here, because the billing statement was attached to Pounds' attorney's fees motion, it was already properly part of the evidence before the hearing. It was because Spring Hill disputed the reasonableness of the amount supported by the billing statement that the hearing was held. The billing statement does not contain hearsay. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). But Pounds did not offer the "statements" in the billing statement to prove the truth of the matters that they assert. That is, Pounds did not offer

the billing statement to prove, for example, that on February 23, 2010, her attorney met with her for one hour or that for this hour he charged her $175. Instead, she offered this statement and the others, and the testimony of her expert, to prove what "reasonable attorneys fees" are in this case.[3] *Compare Hannah v. Sibcy Cline Realtors*, 147 Ohio App.3d 198, 211, 769 N.E.2d 876 (1st Dist.2001) (letter was not hearsay because "[t]he trial court used the letter not to determine factual issues, but to aid it in determining how a real estate agent or broker should respond to a buyer's request for racial information concerning a neighborhood," where the letter was from the Department of Housing and Urban Development and contained an opinion on the legality of a buyer's agent accommodating a buyer who indicated a preference for housing on a racial basis, and the action was for breach of contract by a real estate agent who failed to disclose the ethnic composition of a neighborhood).

{¶ 17} Spring Hill contends that Pounds's request for attorney's fees is improper because the billing statement does not distinguish between the time spent on the security-deposit-return issue and the time spent on other things, like applying for the attorney's fees award. Spring Hill contends that "reasonable attorneys fees" must relate solely to the cost of litigating the security-deposit-return issue and that "the cost of pursuing the [attorney's] fee award is * * * not properly part of a deposit-refund fee request," citing in support *Alexander v. LJF Management, Inc.*, 1st Dist. Hamilton No. C-100618, 2011-Ohio-2532. Brief of Plaintiff/Appellant Spring Hill Townhomes, 22. *Alexander* does not stand for this general proposition. What *Alexander* says is that "a trial court calculating a fee award pursuant to R.C.

---

[3] Spring Hill also contends that Pounds improperly tried to satisfy the business-records hearsay exception for the billing statement by submitting an affidavit from her attorney after the hearing. Because we conclude that the billing statement does not contain hearsay, this issue is moot.

5321.16 is *not required* to consider the time a tenant spends drafting an application for attorney fees." (Emphasis added.) *Alexander* at ¶ 19. It follows that a court *may* consider this time, in its discretion. The *Alexander* court concluded that the trial court in that case abused its discretion by considering this time. We do not conclude that about the trial court in this case. The billing statement here does identify the tasks connected with the attorney's fees application. But it is not clear from the trial court's written decision whether the court considered this time. Even if it did, Spring Hill fails to convince us that doing so was an abuse of discretion.

{¶ 18}   Lastly, Spring Hill contends that the attorney's fees award is disproportionate to the amount in dispute. A court calculates reasonable attorney's fees by first calculating the "lodestar," "the number of hours reasonably expended on the case times an hourly fee." *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 145, 569 N.E.2d 464 (1991). In this calculation, the court must exclude "any hours that were unreasonably expended, e.g., hours that were redundant, unnecessary or excessive in relationship to the work done." (Citation omitted.) *Miller v. Grimsley*, 197 Ohio App.3d 167, 2011-Ohio-6049, 966 N.E.2d 932, ¶ 14 (10th Dist.). Then the court may modify the lodestar by applying the factors listed in Prof.Cond.R. 1.5, *Bittner* at 145, one of which is "the amount involved and the results obtained," Prof.Cond.R. 1.5(a)(4). Still, "'[a] "reasonable" fee must be related to the work reasonably expended on the case and not merely to the amount of the judgment awarded.'" *Miller* at ¶ 16, quoting *Roth Produce Co. v. Scartz*, 10th Dist. Franklin No. 01AP-480, 2001 WL 1654555 (Dec. 27, 2001).

{¶ 19}   Here, Pounds requested attorney's fees of $15,522.50. The trial court considered the relevant factors, including those in Prof.Cond.R. 1.5, and found, in this case, that $175 per hour is a reasonable billing rate and 26.5 hours is a reasonable number to expend, for a total of $4,637.50. "'[W]here a court is empowered to award attorney fees by statute, the amount of such

fees is within the sound discretion of the trial court. Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere.'" *Bittner* at 146, quoting *Brooks v. Hurst Buick-Pontiac-Olds-GMC, Inc.*, 23 Ohio App.3d 85, 91, 491 N.E.2d 345 (12th Dist. 1985). The trial court's attorney's fees award here does not shock our conscience, particularly given that Spring Hill's own expert testified that attorney's fees of up to $5,000 would be reasonable in this case.

{¶ 20} The second assignment of error is overruled.

### C. Vacating the January 29, 2013 Judgment and Amending the Complaint

{¶ 21} The third assignment of error alleges that the trial court erred by vacating the January 29, 2013 judgment and also erred by not permitting Spring Hill to amend its complaint. We do not agree that the vacation is error. But we do agree that the trial court should have permitted the amendment.

{¶ 22} "Interlocutory orders are subject to motions for reconsideration whereas judgments and final orders are not." *Pitts v. Ohio Dept. of Transp.*, 67 Ohio St.2d 378, 379 n. 1, 423 N.E.2d 1105 (1981). The judgment was an interlocutory order subject to revision–which includes vacation–because it does not contain Civ.R. 54(B) language and when it was entered Pounds's R.C. 5321.16(C) award had not yet been determined. *Compare* Civ.R. 54(B) (saying that such a judgment "is subject to revision at any time").

{¶ 23} As to the amendment of the complaint, Spring Hill's motion to amend seeks to add a breach-of-contract claim against Pounds for the $630 that the trial court had already found she owed Spring Hill under the Repayment Agreement. The trial court overruled the motion in the January 29 judgment presumably because that judgment awarded Spring Hill this amount.

Civ.R. 15(B) pertinently provides that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment." Here, the issues pertinent to the breach claim had been tried by the implied consent of the parties, and the court found that "[Pounds] owe[s] Spring Hill $630.00 under the Repayment Agreement," *Spring Hill* at ¶ 8. The court should have permitted the amendment. We note however, that a determination that Pounds owes Spring Hill $630.00 for the side agreement does not absolve Spring Hill from its mandatory duty to timely refund the balance of the security deposit.

**{¶ 24}** The third assignment of error is overruled in part and sustained in part.

### III. CONCLUSION

**{¶ 25}** Under Civ.R. 15(B), Spring Hill's breach claim may be treated as having been raised in its complaint, and judgment in the amount of $630 should be entered for Spring Hill. This judgment should be set off against the $5,176.90 judgment for Pounds. Doing so does not apply the security deposit to the amount owed under the Repayment Agreement–which we rejected in *Spring Hill*. Rather, the "'ancient and well established'" practice of setoff merely "'set[s] off one judgment against another, between the same parties, and due, in the same rights.'" *Montalto v. Yeckley*, 143 Ohio St. 181, 182-183, 54 N.E.2d 421 (1944), quoting *Holmes v. Robinson*, 4 Ohio 90 (1829); *see also Berardi's Fresh Roast, Inc. v. PMD Ents., Inc.*, 8th Dist. Cuyahoga No. 93920, 2010-Ohio-5124, ¶ 32 (recognizing the legitimacy of the practice and citing *Montalto*).

**{¶ 26}** Rather than remand, we exercise our App.R. 12(B) authority to modify the appealed judgment. Judgment is entered for Spring Hill on its breach claim in the amount of $630. Setting off this judgment against the $5,176.90 judgment for Pounds, final judgment is entered for Pounds in the amount of $4,546.90.

**{¶ 27}** The appealed judgment is affirmed as modified.

. . . . . . . . . . . . .

FAIN, and DONOVAN, JJ., concur.

Copies mailed to:

Joseph R. Matejkovic
Scott A Ashelman
Hon. Robert W. Rettich, III